**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS**

| | |
|---|---|
| **UNITED STATES OF AMERICA,** ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | |
| **vs.** ) | **Case No. 14-20022-01-JAR** |
| ) | |
| **JEMEL KNOX,** ) | |
| ) | |
| **Defendant.** ) | |
| _____ ) | |

**GOVERNMENT'S RESPONSE TO DEFENDANT'S
MOTION TO SUPPRESS EVIDENCE**

COMES NOW the United States of America, by and through Terra D. Morehead, Assistant United States Attorney for said District, and hereby responds to the defendant's <u>Motion to Suppress Evidence</u>, which was filed on October 14, 2014 (Doc. 23).   In opposition to the defendant's motion, the Government offers the following.

**I.    <u>Introduction</u>**

The defendant has filed a motion seeking suppression of evidence seized from the search of a residence on February 6, 2014, and more specifically a firearm.  The evidence in question, however, was validly seized pursuant to a search warrant issued by the Honorable Thomas Kelly Ryan, District Court Judge of Johnson County, Kansas.   The defendant's motion sets forth three arguments for suppression of the evidence:    (1) whether the issuance of the warrant was supported by a valid determination of probable cause; (2) whether the information in the affidavit was stale; and, (3) whether the good faith exception would apply absent sufficient probable cause for the issuance of the warrant.  The Government respectfully submits that the seizure of the evidence in question was proper and the defendant's motion to suppress should be denied.

II.   **Facts**

1.   Jemel Knox became the subject of several felony cases in Johnson County District Court.   Knox was originally charged on November 14, 2013, in Johnson County, case number 13CR2619, with Felony Fleeing and Eluding and the case was assigned to Judge Thomas Kelly Ryan. During a court hearing on January 7, 2014, Judge Ryan ordered Knox to submit to a urinalysis and he told Knox to come back to the courtroom once the results were finished.   Shortly after the test, Knox was brought back into the courtroom and the results showed Knox had cocaine and marijuana in his system.   Judge Ryan revoked Knox's bond, placed him in custody, with a new bond directing that the defendant be placed on house arrest with GPS monitoring and he was given a new court date of January 16, 2014.   Knox then ran from courtroom and out of the courthouse, knocking an elderly man to the ground.   Several deputies gave chase and he was arrested a short distance from the courthouse and placed into custody.   On January 8, 2014, Knox posted his new bond.

2.   On January 16, 2014, officers were at the scheduled court hearing to take Knox into custody for a pick up order for Aggravated Intimidation of a Witness in a Wyandotte County, Kansas homicide trial; however, Knox failed to appear in court and it was determined that at the same time he was supposed to be appearing in court, he had cut his GPS monitor off at 907 N. Iowa, Olathe, Kansas, the address of Lindsey Kurtz.   A warrant was issued for Knox's arrest for failure to appear.

3.   Johnson County Sheriff's Detective Kevin Finley[1] was assigned to locate and arrest Knox and he proceeded to Kurtz's residence where it was determined Knox had left on foot.

---

[1] Detective Finley has worked for the Johnson County Sheriff's Department for more than 26 years and has been assigned to the F.B.I. Violent Crimes Task Force for the past five years.

Detective Finley spoke to Lindsey Kurtz, who indicated her Cadillac was missing and she initially thought her sister had the vehicle, but it was determined her sister did not have the vehicle. Lindsey Kurtz provided a telephone number of (660)528-0074, for Knox.   While Detective Finley was at Lindsey's residence, Knox called the Olathe Police Department several times from the number provided by Lindsey and wanted to know why officers were looking for him.   On January 20, 2014, Knox was charged in Johnson County District Court, case number 14CR0151, with Aggravated Escape from Custody, with this case also being assigned to Judge Ryan and a second warrant was issued for Knox's arrest.

   4.   On January 22, 2014, Detective Finley spoke to Knox's previous girlfriend, Cynthia McBee, who indicated the two had recently broken up after he had become violent with her.   Ms. McBee stated that Knox had recently threatened her with a gun if she did not "take the rap" for a gun case out of Clay County.[2]   Ms. McBee's neighbor was present during the incident.[3]   Ms. McBee further stated about that same time, Knox had gone to her stepfather's work in North Kansas City, in possession of a handgun and threatened the stepfather.   Ms. McBee referenced that she had gotten a Protection Order against Knox, which Detective Finley had become aware of on January 17, 2014.   She provided information that Knox "always carries a pistol in his pants and

---

   [2] On September 11, 2013, Knox and Ms. McBee had been stopped in Clay County Missouri in a vehicle, which contained a firearm and narcotics.   Knox had already been charged in connection with this incident, which Detective Finley was already aware about.
   [3] On January 22, 2014, Detective Finley was able to obtain a Kansas City, Missouri Police Department report dated January 12, 2014, which corroborated Ms. McBee's information.   In his affidavit, Detective Finley had indicated to Judge Ryan that the threat had occurred in December; however, it in fact had occurred on January 12, 2014, as referenced in the police report.   Knox claims that "the affidavit makes no suggestion that Mr. Knox is suspected by law enforcement to be in possession of a firearm" (Doc. 23, at 3); however, this is clearly not the case.   Law enforcement had concerns from Ms. McBee's information that Knox was in possession of firearms, which is why Detective Finley sought permission from Judge Ryan to search for firearms.

has numerous weapons to include an AR15 assault type rifle[4] and a Desert Eagle pistol." Ms. McBee also provided the names of several known friends of Knox, to include Alecia Young.

5. On January 23, 2014, law enforcement received information that Knox was traveling in Lindsey Kurtz's Cadillac to pick her up at the Outhouse in Douglas County, Kansas.   When law enforcement spotted the Cadillac, the driver failed to stop and was able to elude officers.   On January 28, 2014, officers made contact with Lindsey Kurtz, who had her Cadillac back in her possession, refused to provide the name of the driver of the Cadillac from the Douglas County pursuit incident on January 23, 2014.   Kurtz denied having any contact with Knox since he had left her apartment on January 16, 2014.

6. On January 28, 2014, Detective Finley received additional information that Knox had obtained a new cell phone number (660)525-3002 and it was confirmed that Knox's prior phone number was no longer in service.   As a result, of this information, F.B.I. Special Agent John Hauger applied for a federal cell phone tracking warrant for Knox's new cell phone, because there was a belief he may have fled Kansas to avoid prosecution on his state charges.   On January 29, 2014, U.S. Magistrate Judge James P. O'Hara signed the cell phone authorization for a 30-day period of time.   *See* Case Number 14-MJ-08022-DJW.   It was initially determined Knox's phone was not turned on; however, on February 1, 2014, at 3:00 p.m. the records showed it was turned on. Officers were able to determine this phone had called numbers associated with Lindsey Kurtz and Alecia Young, which the investigators were already familiar with.   Knox's previously referenced phone had also had contact with the same numbers belonging to Kurtz and Young in the past.

7. On February 3, 3014, the phone was tracked to the area of 431 Freeman, Kansas City,

---

[4] Interestingly, the firearm seized at the time of Knox's arrest was a .223 caliber Century Arms Inc. Georgia VT rifle, Model C15 Sporter, which matched the description of the firearm provided by Ms. McBee.

Kansas, an apartment which investigators confirmed with management at the apartment complex to be rented by Alecia Young.   On February 6, 2014, phone pings again indicated Knox's phone was located within 6 meters of 431 Freeman.   Officers were able to observe Kurtz's white Cadillac in the parking lot of the apartment complex.   Officers observed a black male, with a red hoodie exit 431 Freeman and go out to start the Cadillac.   A white female was observed driving away in the vehicle.   (It should be noted that Lindsey Kurtz is a white female.)   As of 1:07 p.m. on February 6, 2014, the phone pings indicated Knox's cell phone was still located at 431 Freeman.   At approximately 1:31 p.m., Detective Finley applied for and received a search warrant from Judge Ryan.   The search warrant allowed for the search and seizure of Jemel Knox and firearms.   In the affidavit, Detective Finley referenced that Knox was a convicted felon and would be barred from the possession of firearms.   While Knox was wanted out of Johnson County, Kansas, for failure to appear on a felony eluding charge and for aggravated escape from custody, there was probable cause to believe that he might also be committing the crime of felon in possession of firearms.

8.   At approximately 2:10 p.m., officers went to the residence, knocking and announcing police presence. A short time later the door was answered by Alecia Young.   Young and several children were removed from the residence.   It was determined that Knox was upstairs in the residence.   Police presence was repeated several times and multiple commands were given to Knox to come downstairs and surrender to officers to no avail.   A robot was used to locate Knox hiding underneath the bed in the master bedroom.   When confronted by the robot and when given additional verbal commands, Knox came halfway down the stairs and was yelling at officers to back up and to give him his glasses.   Knox had the robot in his hand and threw it into the living room.   Knox continued to yell at officers and took a step back up the stairs.   Knox was forcibly

5

taken into custody without further incident.  Following Knox's arrest, officers located a .223 caliber Century Arms Inc. Georgia VT rifle, Model C15 Sporter, serial number CM00280 in a grey/green suitcase that was on the floor next to the bed Knox had been hiding under.   The firearm had a round in the chamber and a large capacity magazine containing 37 additional rounds was also located in the suitcase.

9.   Law enforcement interviewed Young who said that Knox did not live with her and that he arrived at her house about 8:30 p.m. the previous evening.  A couple of hours later "Lindsey", came to the residence in a white Cadillac with Knox's suitcase and food from taco bell. Knox had brought the suitcase into the living room area and later Knox asked Young to move the suitcase out of the way, so she took the suitcase upstairs to the master bedroom. Lindsey stayed the night sleeping in the living room with Knox, but she had left in the Cadillac in the morning, prior to officers' arrival.   Young described Knox's suitcase in a manner that sounded similar to the suitcase that had been located in the master bedroom.   Young was shown the suitcase that was located near the bed Knox had been hiding under and she identified it as Knox's suitcase.   Young said the clothing in the suitcase belonged to Knox.   Young was shown the firearm that was in the suitcase and she indicated the firearm was not hers.   Also located in the suitcase were personal effects including male clothing and a toothbrush.   Male DNA consistent with Knox was found on the firearm.   DNA on the toothbrush matched that of Knox.

## III.    Arguments and Authority

### 1.    The Affidavit was supported by sufficient probable cause.

According to the United States Constitution, a valid search must be based on a warrant which was issued on the basis of probable cause.   U.S. Const. Amend. IV.   The proponent of the motion to suppress bears the burden of demonstrating that sufficient probable cause to issue the

warrant was not shown.   *See United States v. Madrid,* 30 F.3d 1269, 1274 (10th Cir. 2008) (citing *United States v. Carr,* 939 F.2d 1442, 1446 (10th Cir. 1991); *United States v. Moore*, 22 F.3d 241, 243 (10th Cir. 1994).

Courts in this district have stated on several occasions that a determination of probable cause by a neutral judge or magistrate is to be accorded "great deference."   *See United States v. Reno*, 196 F.Supp.2d 1150, 1157 (D.Kan. 2002) (citing *United States v. Finnigin*, 113 F.3d 1182, 1185 (10th Cir. 1997)); *see also*, *United States v. Downes*, 2001 WL 121951, *3 (D.Kan. 2001). They have also stated that:

> In deciding a suppression motion based upon the asserted failure of the affidavits to provide probable cause for the warrant, the reviewing court must remember that the magistrate is permitted to draw reasonable inferences from the affidavits. . .   *See United States v. Edmonson,* 962 F.2d 1535, 1540 (10th Cir. 1992); *United States v. Peveto,* 881 F.2d 844, 850 (10th Cir. 1989).   When reviewing a magistrate's issuance of a search warrant the court must determine whether the magistrate had a substantial basis for concluding that probable cause existed.   *Illinois v. Gates,* 462 U .S. 213, 236 (1983).

*United States v. Pierce*, 2000 WL 821386, *1 (D.Kan. 2000).

According to *Gates*, *supra*, the test to be employed by a reviewing court is the totality of the circumstances, because "[p]robable cause is a fluid concept – turning on the assessment of probabilities in particular factual contexts – not readily, or even usefully, reduced to a neat set of legal rules."   *Gates,* 462 U.S. at 232.   The Tenth Circuit has stated that "[t]he 'affidavit' should be considered in a common sense, nontechnical manner."   *Edmonson*, 962 F.3d at 1540 (quoting *United States v. Massey,* 687 F.2d 1348, 1355 (10th Cir. 1982)).

Interestingly, the *Pierce* case raises several the same issues that have been raised herein. Specifically, Pierce challenged that the affidavit lacked sufficient information about the

informant's reliability, much the same that the defendant herein complains that Ms. McBee's credibility was not established within the confines of the affidavit.   The court noted that "[v]eracity and basis of knowledge are not, however, rigid and immovable requirements in the finding of probable cause" and that "[a] deficiency in one element may be compensated for 'by a strong showing as to the other, or by some other indicia of reliability."   *Citing United States v. Corral*, 970 F.2d 719, 727 (10th Cir.1992).

The defendant also argues that the affidavit failed to establish Ms. McBee's credibility and claims that her credibility was not tested and that her statements are "merely hearsay and do not form the adequate foundation to give rise to probable cause."   Detective Finley was able to corroborate a significant amount of information from Ms. McBee including the threat event that had occurred on January 12, 2014 and the issuance of the PFA.   In addition, Ms. McBee provided information that Knox was friends with Alecia Young, whose residence happened to be the very location where Knox was located on February 6, 2014.

*Pierce* also challenged that there was an insufficient nexus between the residence searched and the items and staleness.   Judge Crow noted that:

> The evidence to support probable cause must be particularized to the defendant for which the warrant is being sought.   *Ybarra v. Illinois*, 444 U.S. 85, 91 (1979).
>
> It is not necessary, however, that the affidavit indicate that the evidence sought will undoubtedly be found in the place to be searched.   Rather, it is only necessary that the facts and circumstances described in the affidavit warrant a man of reasonable caution to believe that such evidence is located at the premises or location to be searched.

*United States v. Johnson*, 645 F.2d 865, 867-868, (10th Cir. 1981).

Probable cause requires a nexus between suspected criminal activity and the place to be

searched.  *United States v. Rowland*, 145 F.3d 1194, 1203-04 (10th Cir. 1998).  Probable cause to issue a search warrant exists when the supporting affidavit sets forth sufficient facts that would lead a prudent person to believe that a search of the described premises would uncover contraband or evidence of a crime.  *Id. citing United States v. Burns*, 624 F.2d 95, 99 (10th Cir. 1980).  To establish the required nexus, the affidavit supporting the search warrant need not contain direct evidence or personal knowledge that the items sought are located at the place to be searched. Rather, the issuing magistrate judge "may draw reasonable inferences from the material provided in the warrant application."  *Rowland*, 145 F.3d at 1205.

The defendant asserts that the probable cause to search for the firearm had to have a connection to the residence.  Such is not the case.  The firearm only had to have a connection to Knox.  The defendant's reliance on *United States v. Bautista-Meza*, 2014 WL 2158408 (D.Kan. 2014) is misguided because it involved a drug case, in which an affidavit failed to link suspected criminal activity to a particular residence.

The defendant has provided the Court with a copy of the affidavit at issue in this case.  The Government respectfully submits that the information contained in the affidavit, when considered in combination with the reasonable inferences Judge Ryan was allowed to draw from the information, provided the judge with probable cause to believe that Knox would be found at the residence and that Knox was known to always be in possession of firearms, as such, Judge Ryan was able to infer that firearms would be found along with Knox at the residence..   Thus, defendant's challenges to the probable cause contained in the affidavit should be overruled and denied.

**2.      The information contained in the affidavit was not stale.**

Detective Finley informed Judge Ryan that there was information Knox was known to

always be in possession of firearms and that in the recent past Knox was known to possess a firearm.   The defendant accuses Detective Finley of "bootstrapping" the firearm to the residence and argues there was no specific time frame to Knox's possession of the firearm in the affidavit, thereby making the information potentially stale.   Knox's possession of the firearm had occurred as recently as January 12, 2014, some 25 days before the issuance of the search warrant, which Detective Finley was able to corroborate.   Ms. McBee provided this information to Detective Finley only sixteen days before the issuance of the warrant.   The affidavit referenced the event as being in December; however, as previously noted this was an error because the event had actually occurred even more recently – in January.   Regardless, whether Ms. McBee's incident occurred in December or January, the information that Knox was always in possession of a firearm was not stale.

Judge Crow addressed the staleness issue in *Pierce* at *4-5:

It is true that "[p]robable cause to search cannot be based on stale information that no longer suggests that the items sought will be found in the place to be searched."   *United States v. Snow*, 919 F.2d 1458, 1459 (10th Cir. 1990) (citing *United States v. Shomo*, 786 F.2d 981, 983 (10th Cir. 1986)).   However, "the determination of timeliness depends not merely on the passage of time but on the nature of the criminal activity, the length of the activity, and the nature of the property seized."   *United States v. Smith*, 63 F.3d 956, 960 (10th Cir. 1995).   "Ongoing and continuous activity makes the passage of time less critical."   *Snow*, 919 F.2d at 1460; see *United States v. Pace*, 981 F.2d 1123, 1133 (10th Cir.1992) (when the affidavit contains information of an ongoing criminal activity, the passage of time is not as significant; *United States v. Sturmoski*, 971 F.2d 452, 457 (10th Cir. 1992) (finding the passage of time not critically important where the) offense in question was ongoing and continuing."); *$149,442.43 in U.S. Currency*, 965 F.2d at 873.

The staleness doctrine recognizes that probable cause may dissipate with time.   *United States v. Miles*, 772 F.2d 613, 616 (10th Cir. 1985).   Probable cause is not simply a matter of counting the days between the events relied upon and the issuance of the warrant.   *United States v.*

*Reyes*, 798 F.2d at 382. There must be circumstances from which one can infer that the grounds for the warrant still exist and will continue to exist up to the timely execution of the warrant.   See *United States v. Rahn*, 511 F.2d 290, 292-93 (10th Cir.), *cert. denied*, 423 U.S. 825 (1975).

. . . The proper approach is, instead, to consider the "totality" of the information stated in the affidavit.  *Id.*   Thus, where drug activities are "ongoing and continuous" considering all the information stated in the affidavit, then the passage of time does not render the information stale.  *United States v. Myers*, 106 F.3d 936, 939 (10th Cir.), *cert. denied*, 117 S.Ct. 2446 (1997).

The defendant seems to suggest that the "nature of the criminal activity, for which Mr. Knox was being sought, was for a failure to appear on a fleeing and eluding case and a separate escape from custody charge."   However, the "nature of the criminal activity," which was the basis upon which Detective Finley requested to be allowed to search for firearms was because Knox was a convicted felon, who was prohibited from owning or possessing firearms and because there was probable cause to believe he was in possession of firearms.   Someone in Knox's situation as a convicted felon "often maintain possession of their illegal firearms and ammunition for long periods of time, often in excess of one (1) year."  *See United States v. Langford*, 2013 WL6055490, *2 (N.D. Okla. 2013).   A firearm is a commodity which is retained and held for years and the length of time that probable cause remains fresh is for an extended time period.  *United States v. Rahn*, 511 F.2d 290 (10th Cir. 1975); *United States v. Batchelder*, 824 F.2d 563, 547 (7th Cir. 1983); *United States v. Ellison*, 793 F.2d 942, 947 (8th Cir. 1986); *United States v Maxim*, 55 F.3d 394, 397-98 (8th Cir. 1995); *United States v. Collins*, 61 F.3d 1379 (9th Cir. 1995).

Thus, when evaluating probable cause as it applies to the nature of the criminal activity herein – unlawful possession of a firearm – the defendant has squarely missed the staleness argument and application of the law that applies, because possession of a firearm by a convicted

felon is a continuing offense.  *See United States v. Lester*, 285 Fed.Appx. 542 (10th Cir. 2008)

(*citing United States v. Maxim*, 55 F.3d 394, 397 (8th Cir. 1995) (noting that federal firearms

violations were "continuing offenses" because they "punish[ ] the possession and not merely the

acquisition of a firearm" (internal quotation marks omitted)).

   **3.**  **The good faith exception applies because the officers' reliance on the validity of the search warrant was reasonable.**

   Even if the court finds that the affidavit was somehow insufficient, the *Leon*[5] good faith

exception should be applied in this case.

> In *Leon*, the Supreme Court held that evidence seized under a
> search warrant later determined to be invalid may be admissible if
> the officers executing the warrant acted in good faith and with
> objectively reasonable reliance on the search warrant.  *See United
> States v. Corral-Corral*, 899 F.2d 927, 932-933 (10th Cir. 1990).
> There are four situations, however, in which the good faith
> exception is not applicable:    (1) if the issuing magistrate was
> "'misled by information in an affidavit that the affiant knew was
> false or would have known was false except for his reckless
> disregard for the truth;'"    (2) if "'the issuing magistrate wholly
> abandoned his judicial role;'" (3) if the affidavit was "'so lacking
> in indicia of probable cause as to render official belief in its
> existence entirely unreasonable,'" or in other words, where "'the
> warrant application was supported by [nothing] more than a "bare
> bones" affidavit; "' and (4) if the warrant was facially deficient.
> *United States v. Van Shutters, II*, 163 F.3d 331, 337 (6th Cir. 1998)
> (*quoting Leon*, 468 U.S. at 914-15, 104 S. Ct. at 3416-17).

*Pierce*, supra. *6.

   Judge Crow also noted:

---

[5]*United States v. Leon*, 468 U.S. 897 (1984).

The first notion to be remembered in considering the good faith principle is the presumption created in *Leon* that when an officer relies upon a warrant, the officer is acting in good faith. *United States v. Cardall*, 773 F.2d 1128, 1133 (10th Cir. 1985) (citation omitted).   This presumption, though not absolute, "must carry some weight."   *Id.; see also Leon*, 468 U.S. at 922, 104 S.Ct. at 3420 ("[S]earches pursuant to a warrant will rarely require any deep inquiry into reasonableness, for a warrant issued by a magistrate normally suffices to establish that a law enforcement officer has acted in good faith in conducting the search.") (internal quotations omitted).   Because "the 'good-faith inquiry is confined to the objectively ascertainable question whether a reasonably well trained officer would have known that the search was illegal despite the magistrate's authorization,'"   *Cook*, 854 F.2d at 372 (*quoting Leon*, 468 U.S. at 922 n. 23, 104 S. Ct. at 3420 n. 23), the reviewing court must examine "the text of the warrant and the affidavit to ascertain whether the agents might have 'reasonably presume[d] it to be valid.'"   *Corral-Corral*, 899 F.2d at 932 (*quoting Leon*, 468 U.S. at 923, 104 S.Ct. at 3421).   In short, the question is whether "the officer is acting as a reasonable officer would and should act in similar circumstances."   *Leon*, 468 U.S. at 920, 104 S. Ct. at 3419 (*quoting Stone v. Powell*, 428 U.S. 465, 539-40, 96 S. Ct. 3037, 3073-74, 49 L.Ed.2d 1067 (1976) (White, J., dissenting)). *McKneely*,[6]  6 F.3d at 1455.

*Id.*, *7.

Here, the affidavit was in no way devoid of factual support, nor were the facts contained therein legally insufficient. *Id.*[7]   The conduct of the agents in seeking and executing the warrant was not inconsistent with what should be expected of a reasonably well-trained officer. Nothing in the record indicates that the officers would have had any reason to believe that the

---

[6]*United States v. McKneely*, 6 F.3d 1447 (10th Cir. 1993).

[7]*Citing Cardall*, 773 F.2d at 1133; *United States v. Bishop*, 890 F.2d 212, 217 (10th Cir. 1989) (officer reasonably could have concluded affidavit contained sufficient indicia of probable cause to believe evidence of bank robbery would be found in apartment and automobile despite absence of proof of informant's veracity or reliability); *United States v. Medlin*, 798 F.2d 407, 409 (10th Cir. 1986) (agents' reliance on warrant was objectively reasonable because warrant affidavit was not devoid of facts); *United States v. Wright*, 791 F.2d 133, 135 (10th Cir. 1986).

affidavit was constitutionally invalid or even questionable.

The Tenth Circuit has repeatedly emphasized that "[i]n determining whether the *Leon* good-faith exception should be applied, the 'good faith inquiry is confined to the objectively ascertainable question whether a reasonably well trained officer would have known that the search was illegal despite the magistrate's authorization.'"   *Rowland*, 145 F.3d at 1207 (quoting *Leon*, at 922 n. 23).   Judge Crow referenced, to this end, that the Tenth Circuit has also advised that an officer's reliance on a warrant creates a presumption of good faith that "is not. . . absolute," but does "carry some weight," and that "the knowledge and understanding of law enforcement officers and their appreciation for constitutional intricacies are not to be judged by the standards applicable to lawyers."   *Citing Cardall*, 773 F.2d 1133.

Here, the agents executed a magistrate-authorized warrant which, coupled with the affidavit's factual foundation, created a presumption of good faith.   The Tenth Circuit's decisions indicate that when an affidavit is not completely devoid of facts supporting probable cause, a court should not second guess an officer's reliance on a magistrate-authorized warrant. Application of the good-faith exception in this case, therefore, is consistent with the exception's rationale, namely, deterring unlawful police conduct.   See *Rowland*, 145 F.3d at 1208 (examining whether applying *Leon* would be consistent with its rationale).   The agents' reliance on the affidavit was not objectively unreasonable and nothing in the record suggests any misconduct in the agents' execution of the warrant.   Thus, the Tenth Circuit's observation from *Rowland* is equally applicable in this case:   "Penalizing the officers for a mistake not their own 'cannot logically contribute to the deterrence of Fourth Amendment violations.'"   *Ibid.* (quoting *Leon*, 468 U.S. at 921).

Given the strong presumption in favor of searches conducted pursuant to a warrant, the

"great deference" accorded to a judge's probable cause determination, and the fact that the affidavit contained sufficient facts at least to establish probable cause that Knox was engaging in criminal activity, i.e., unlawful possession of firearms, reasonable officers in the shoes of Detective Finley and the other agents would and should have assumed the search warrant was valid.   Even if the Court determines that Judge Ryan's determination of probable cause was not supported by a sufficient affidavit, the defendant's motion to suppress should nevertheless be denied, because the agents were acting in good faith in their reliance upon a warrant which was apparently valid.

## IV.   Conclusion

For the reasons discussed above, the Government respectfully submits that all of the evidence obtained in this case was gathered by the law enforcement officers pursuant to a legally valid search warrant, which was based upon sufficient probable cause and which was not stale. Even if the Court determines that the warrant was not valid, the agents acted in good faith when they relied on the warrant.

WHEREFORE, the Government respectfully requests the defendant's motion to suppress be denied.

Respectfully submitted,

BARRY R. GRISSOM
United States Attorney

_s/ Terra D. Morehead_____
Terra D. Morehead, #12759
Assistant U.S. Attorney
500 State Avenue, Suite 360
Kansas City, Kansas 66101
(913) 551-6730
Terra.Morehead@usdoj.gov

<u>CERTIFICATE OF SERVICE</u>

I hereby certify that on the 3rd day of November, 2014, I electronically filed the foregoing response with the clerk of the court by using the CM/ECF system which will send a notice of electronic filing to counsel of record.

<u>        *s/ Terra D. Morehead*                </u>
Terra D. Morehead
Assistant United States Attorney

16