**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF KANSAS**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 14-20022-01-JAR |
| | ) | |
| JEMEL KNOX, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |
| | ) | |

**MEMORANDUM AND ORDER**

This matter comes before the Court on Defendant Jemel Knox's Motion to Suppress Evidence (Doc. 23).  Defendant contends the firearm seized during an apartment search should be suppressed because the warrant authorizing the search was not supported by a showing of probable cause.  The Government has responded (Doc. 26), and an evidentiary hearing was held on November 24, 2014.  The Court has reviewed the evidence and arguments adduced at the hearing and is now prepared to rule.  As explained in detail below, although the Court finds the search warrant was not supported by probable cause, the Court concludes the good-faith exception to the exclusionary rule applies.  The Court denies Defendant's motion.

**I.      Background**

On January 16, 2014, Defendant failed to appear in state court for a hearing on a charge for felony fleeing and eluding.  Officers determined that at the time of the hearing, Defendant had cut off his GPS monitor and fled from an apartment building at 907 North Iowa Street in Olathe, Kansas.  Based on these events, the Johnson County District Court issued two warrants

for Defendant's arrest: one for failure to appear and another for aggravated escape from custody.

The Johnson County Sheriff's Office assigned Detective Kevin Finley to locate and arrest

Defendant.  In a search warrant affidavit later filed with the Johnson County District Court,

Detective Finley describes the relevant pieces of his investigation as follows:

> 1. . . . Knox is . . . a convicted felon barred from possessing firearms.
>
> 2. [On 01/16/2014,] Officers contacted a Lindsey Kurtz, W/F 10/27/1984, at 907 N. Iowa, Olathe, Kansas and conducted a search and recovered the GPS Monitor.  Mr. Knox was not located and Lindsey's 2003 Cadillac Deville was missing from the apartment parking lot.  Lindsey only advised Knox left on foot and she had no idea where he would be.  Lindsey advised her sister, Sidney Kurtz, had her Cadillac.  Lindsey provided a telephone number of 660-528-0074 for Knox.  Knox contacted Olathe Police Department at the time of Lindsey's interview and search of the apartment inquiring why officers were at the apartment looking for him.  Knox called from the same telephone number as identified by Lindsey as belonging to Knox.  Officers confirmed Sidney Kurtz did not have the Cadillac and that Knox was still in possession of the Cadillac.
>
> . . .
>
> 4. On 01/22/2014, affiant contacted a previous girlfriend of Knox's, Cynthia McBee.  She advised she and Knox broke up and no longer lived together.  She advised that Knox had become violent with her lately and she had a Protection Order issued against him.  She did advise he always carried a gun and had threatened her and her neighbor in December.  He had also gone to her father's job in Kansas City, Missouri and threatened him and his employees with a gun.  She said he always carries a pistol in his pants and has numerous weapons to include an AR15 assault type rifle and a Desert Eagle pistol. . . . She did provide two friends names of Michael Dupree Jr, and Alecia Young.  Cynthia was able to identify both parties by Knox's Facebook posts that the officer provided.
>
> . . .
>
> 6. On 01/28/2014, affiant was contacted by a source close to the investigation that Knox had obtained a new cell phone number of

2

660-525-2003.  This officer attempted to contact the previous telephone number of 660-528-0074.  It showed no longer in service and disconnected on 01/16/2014 by the telephone company.

. . .

8.  On 01/30/2014, SA John Haugher had a federal order signed for cell phone tracking on telephone number 660-525-2003.  The order was sent to T-Mobile and it was confirmed the phone account was active but not turned on.  Investigators determined the phone was turned back on 02/01/2014 at 3pm.  Phone records obtained show numerous calls to Lindsey Kurtz and Alecia Young that use the same numbers as investigators observed on Knox's previous phone's call log of 660-528-0074.

9.  On 02/03/2014, technicians with the FBI were able to track the phone (660-525-3002) to the area of 431 Freeman, Wyandotte County, Kansas City, Kansas.  This is an apartment complex and apartments are individually numbered.  A computer check had provided the address for an Alecia Young B/F 11/15/1986 at 431 Freeman Kansas City, Kansas.  Officers were unable to keep surveillance on the apartment due to location and time of day.

10.  On 02/06/2014, the phone (660-525-3002) "pings," within a range of 6 meters, at the building of 431 Freeman, Wyandotte County, Kansas City, Kansas.  A "ping" is a notification from T-Mobile that the phone is active and on and provides a distance between the nearest cell phone tower and the phone.  Officers confirmed with management for the complex that Alecia Young . . . does reside and is on the lease at 431 Freeman. . . .  Also, located in the parking lot was the white Cadillac registered to Lindsey Kurtz . . . .  Officers observed a black male with a red hoodie exit a building at the apartment complex of 431 Freeman to go out to start the Cadillac.  A white female drove away alone in the vehicle.  Officers were unable to identify the female leaving in the Cadillac.

11.  T-Mobile notifies investigators when the "ping" location changes and as of 1:07 pm on 2/06/14, the phone remains at the same location previously identified as 431 Freeman, Wyandotte County, Kansas City, Kansas.  Jemel Knox has at least two felony warrants issued for his arrest at this time out of Johnson County District Court: 13CR2619 and 14CR151.  Officers are seeking a search warrant to enter 431 Freeman, Kansas City, Wyandotte

County, Kansas to arrest Jemel Knox.[1]

Based on this affidavit, a Johnson County District Court judge issued a warrant authorizing officers to search the apartment at 431 Freeman and to seize (1) the body of Defendant Jemel Knox, and (2) firearms.[2]  Detective Finley and other officers executed the warrant in the afternoon of February 6, 2014, the same day they had tracked Defendant's cell phone to the apartment.  In the apartment, officers found and forcibly arrested Defendant.  They also seized a .223 caliber semi-automatic rifle discovered in a suitcase in the apartment's master bedroom.

Defendant is now charged with being a felon in possession of a firearm.  He moves to suppress the rifle seized in the execution of the search warrant, contending Detective Finley's affidavit did not provide probable cause to believe a firearm would be found in the apartment at 431 Freeman at the time of the search.

## II.   Discussion

### A.   *Probable Cause*

To issue a search warrant, a magistrate must determine that probable cause supporting a search exists.[3]  "An affidavit establishes probable cause for a search warrant if the totality of the information it contains establishes the fair probability that contraband or evidence of a crime will be found in a particular place."[4]  If a magistrate considered only a supporting affidavit in issuing

---

[1]Doc. 23-1.

[2]Doc. 23-2.

[3]*United States v. Soderstrand*, 412 F.3d 1146, 1152 (10th Cir. 2005).

[4]*Id.*

the warrant, the reviewing court likewise looks only to the affidavit to determine the existence of probable cause.[5]  In addition, because of the strong preference for searches conducted pursuant to a warrant, the Court must afford "great deference" to a magistrate's probable-cause determination: the Court's duty is only to "ensure that the magistrate judge had a 'substantial basis' for concluding that the affidavit in support of the warrant established probable cause."[6]

As Defendant points out, the only information in Detective Finley's affidavit suggesting Defendant possessed a firearm came from Defendant's ex-girlfriend Cynthia McBee.  During her conversation with the detective, Ms. McBee stated that: (a) she and Defendant no longer lived together; (b) she had obtained a protection order against Defendant; (c) Defendant had threatened her and her neighbor in December; (d) Defendant had threatened Ms. McBee's father and his employees at gunpoint; (e) Defendant "always" carried a firearm on his person; (f) Defendant possessed a number of weapons, including a pistol and a rifle; and (g) Michael Dupree, Jr., and Alecia Young were two of Defendant's friends.[7]

Defendant argues that Ms. McBee's information did not provide probable cause for the apartment search.  Defendant contends, first, that the affidavit failed to show that Ms. McBee's statements about the firearms were reliable; second, that Ms. McBee's information was stale; and third, that Ms. McBee's report failed to establish a nexus between a firearm and the

---

[5]*United States v. Beck*, 139 F. App'x 950, 954 (10th Cir. 2005) (citing *Whiteley v. Warden, Wyo. State Penitentiary*, 401 U.S. 560, 565 n.8 (1971)).  At the suppression hearing, Detective Finley indicated that the only extraneous evidence the magistrate considered in issuing the warrant was the detective's oral testimony on how "phone pings" work.  Because the parties do not dispute the reliability of the cell-phone tracking method used in this case, the Court will consider only the supporting affidavit in reviewing the probable-cause determination.

[6]*United States v. Nolan*, 199 F.3d 1180, 1182 (10th Cir. 1999) (quoting *Illinois v. Gates*, 462 U.S. 213, 236 (1983)).

[7]*See* Doc. 23-1 ¶ 4.

apartment at 431 Freeman.  The Court will address each contention in turn.

1.      Ms. McBee's Reliability

In evaluating an informant's report, the informant's veracity and basis of knowledge are highly relevant.[8]  "Veracity and basis of knowledge are not, however, rigid and immovable requirements in the finding of probable cause.  A deficiency in one element may be compensated for by a strong showing as to the other, or by some other indicia of reliability."[9]  One valuable indication of reliability, frequently relied on to support a showing of probable cause, is independent police corroboration of the details set forth in an informant's report.[10]

Defendant contends Detective Finley's affidavit failed to show that Ms. McBee was a reliable source.  The affidavit did not state that Ms. McBee had provided accurate information to the police on previous occasions, nor did it indicate the basis of Ms. McBee's knowledge concerning the firearms she reported Defendant to possess.  Further, in Defendant's view, Detective Finley did little to corroborate the accuracy of Ms. McBee's information.  Absent a showing on Ms. McBee's veracity and basis of knowledge, and without some form of corroboration suggesting Defendant possessed firearms, Defendant insists Ms. McBee's report could not establish probable cause.

The Government maintains that Detective Finley corroborated enough of Ms. McBee's report to show that she was a reliable informant.  In particular, Ms. McBee informed Detective

---

[8]*See United States v. Pulliam*, 748 F.3d 967, 971 (10th Cir. 2014); *United States v. Corral*, 970 F.2d 719, 727 (10th Cir. 1992) (citing *Gates*, 462 U.S. at 230).

[9]*Corral*, 970 F.2d at 727 (quoting *Gates*, 462 U.S. at 233) (internal quotation marks omitted).

[10]*See Gates*, 462 U.S. at 241 ("Our decisions . . . have consistently recognized the value of corroboration of details of an informant's tip by independent police work.").

Finley of a friendship between Defendant and Alecia Young.  The detective corroborated that friendship through Defendant's phone records, which show numerous calls to Ms. Young's phone, and through tracking technology that pinpointed Defendant's cell phone to Ms. Young's apartment building on the day of the search.  Because Ms. McBee thus proved correct about Defendant's relationship with Ms. Young, the Government urges that Ms. McBee was "more probably right about other facts," including the facts she reported about Defendant's possession of firearms.[11]

The value of police corroboration in establishing probable cause depends on the types of facts corroborated.  Where an informant predicts "future actions of third parties not easily predicted," corroboration of those predictions is entitled to great weight.[12]  Where, on the other hand, officers corroborate only innocent, non-predictive information that does not show an informant's "knowledge of concealed criminal activity," the informant's report is generally insufficient to establish probable cause.[13]  Thus, in *United States v. Tuter*,[14] the Tenth Circuit found that an informant's tip failed to provide probable cause even though the tip accurately described the suspect's appearance, residence, and vehicle, as well as the age of the suspect's

---

[11]*See Gates*, 462 U.S. at 244 (quoting *Spinelli v. United States*, 393 U.S. 410, 427 (1960) (White, J., concurring)).

[12]*See id.* at 245 (finding an anonymous tip sufficient to establish probable cause because it "contained a range of details relating not just to easily obtained facts and conditions existing at the time of the tip, but to future actions of third parties not easily predicted); *see also Alabama v. White*, 496 U.S. 325, 332 (1990) (deeming an anonymous tip sufficiently reliable because police corroborated the informant's predictions regarding the suspect's future activity).

[13]*See Florida v. J.L.*, 529 U.S. 266, 270–71 (2000) (emphasis added) (finding that a tip was insufficient to establish even a reasonable suspicion where the tip accurately described the suspect's physical attributes but did not predict future behavior).

[14]240 F.3d 1292 (10th Cir. 2001).

child.[15]  Accuracy on those "innocent, innocuous" facts did not show the report was reliable "in

its assertion of illegality,"[16] that is, in its assertion that the suspect was making pipe bombs in his

garage.[17]  The Tenth Circuit also found probable cause lacking in *United States v. Danhauer*,[18]

where police corroborated information about the suspect's residence and criminal history but did

not "verify the informant's most serious allegation, that the [suspect was] manufacturing

methamphetamine."[19]

 In some circumstances, however, corroboration of innocent, non-predictive information

may be meaningful.  In *United States v. Jenkins*,[20] the Tenth Circuit noted that such

corroboration carries some weight where the reported information is not readily observable, but

rather helps establish that the informant and the suspect in fact have a relationship.[21]  Because

the informant in that case knew that the suspect had a birthday in September, owned a storage

rental unit near his residence, and had recently been arrested on a domestic violence charge, the

informant's report suggested he had a relationship with the suspect and, thus, a potential basis of

knowledge for his allegations of drug trafficking and gun possession.[22]  But the *Jenkins* court

also relied on more direct indicia of criminal activity to find probable cause.  The affiant

---

[15]*Id.* at 1297–98.

[16]*See id.* at 1296 (quoting *J.L.*, 529 U.S. at 272).

[17]*See id.* at 1297–98.

[18]229 F.3d 1002 (10th Cir. 2000).

[19]*Id.* at 1006.

[20]313 F.3d 549 (2002).

[21]*See id.* at 555.

[22]*See id.*

detective, in particular, had obtained information from other officers who knew the suspect to be a gang member with a reputation for dealing crack cocaine; police reports also showed that the suspect possessed a handgun at the time of his recent domestic violence arrest.[23]  In light of these additional facts further confirming the informant's report, the court found the report sufficiently reliable to permit a finding of probable cause.[24]

The Court finds this case similar to *Tuter* and *Danhauer*.  As in those cases, the supporting affidavit here contains no information about the veracity or historical reliability of Ms. McBee.[25]  Thus, as in those cases, her report "provides virtually nothing from which one might conclude that [Ms. McBee] is either honest or [her] information reliable."[26]  And like the officers in *Tuter* and *Danhauer*, Detective Finley corroborated only innocent, non-predictive information that is available to those without a special knowledge of the criminal activity suspected.[27]  Ms. McBee's awareness of Defendant's friendship with Alecia Young does tend to show that Ms. McBee, like the informant in *Jenkins*, in fact had a relationship with the suspect.[28]  That fact alone, however, has not sufficed to establish probable cause absent some additional

---

[23]*Id.* at 556.

[24]*See id.* at 554.

[25]*See Tuter*, 240 F.3d at 1297; *Danhauer*, 229 F.3d at 1004, 1006;  *see also United States v. Bishop*, 890 F.2d 212, 215 (10th Cir. 1989).

[26]*See Tuter*, 240 F.3d at 1297 (quoting *Alabama v. White*, 496 U.S. 325, 329 (1990)) (internal quotation marks omitted).

[27]*See id.*; *Danhauer*, 229 F.3d at 1006.

[28]*See* 313 F.3d at 555.

indication that the informant's report is truthful and accurate "in its assertion of illegality."[29]  The affidavit in this case, in contrast to the one at issue in *Jenkins*, contains no independent indication that Ms. McBee's allegations of *criminal activity* were reliable.

In addition, and perhaps most importantly, the affidavit fails to show corroboration of other claims which appear readily verifiable and which, if true, would more directly substantiate Ms. McBee's report about the firearms.[30]  Detective Finley, for example, might have confirmed with Ms. McBee's father and his employees that Defendant had in fact threatened them at gunpoint.  The detective might have asked Ms. McBee's neighbor whether Defendant threatened her in December.  And the detective might have verified that Ms. McBee has a protection order against Defendant.  Corroboration of these claims, in combination with Ms. McBee's accurate statement concerning Alecia Young, might have sufficed to show that Ms. McBee was reliable in her assertion that Defendant owns multiple firearms and "always" carries one on his person.  But if Detective Finley pursued any of these avenues of corroboration, the affidavit fails to reflect those efforts.  Instead, the affidavit showed corroboration of only a single, innocent fact, wholly unrelated to the suspected illegal activity and reported by an informant of otherwise unknown and unassessed credibility.  Under the circumstances, the affidavit did not provide a substantial basis for finding that Ms. McBee's information about the firearms was reliable.

---

[29]*See J.L.*, 529 U.S. at 272; *cf. Jenkins*, 313 F.3d at 554–55 (finding sufficient indicia of reliability where the report showed the informant had a relationship with the suspect and where the detective had independently obtained information about the suspect's involvement in drug and firearm possession that was consistent with the informant's allegations of criminal activity).

[30]*See United States v. Weaver*, 99 F.3d 1372, 1379 (6th Cir. 1996) (finding an affidavit failed to establish probable cause, even though officers verified the suspect lived at a particular address, because the officers should have undertaken other "substantive independent investigative actions to corroborate [the] informant's claims"); *cf. United States v. Bishop*, 890 F.2d 212, 217–18 (10th Cir. 1989) (finding officers' reliance on a warrant objectively reasonable where the officers "presented the magistrate with as much factual corroboration of the informant's statements as a thorough investigation allowed").

10

2.      Timeliness of Ms. McBee's Information

Defendant next contends that Ms. McBee's report about the firearms, in addition to being

unreliable, was too outdated to justify the search warrant.  Probable cause, Defendant observes,

"cannot be based on stale information that no longer suggests that the item sought will be found

in the place to be searched."[31]

The Government responds that Ms. McBee's report pertained to recent events.

According to the Government, though Ms. McBee stated that Defendant had threatened her and

her neighbor in December 2013, a police report shows that the threat actually occurred more

recently, in January 2014.[32]  And, the Government continues, Defendant carried out that threat

using a firearm.[33]  Detective Finley also testified at the suppression hearing that the threat Ms.

McBee reported concerning her father and his employees occurred in December 2013.  The

Government thus argues that Defendant possessed a firearm in the months leading up to the

apartment search and was seen with a gun as recently as twenty-five days before the magistrate

issued the warrant.

The problem with the Government's assertions is that the affidavit itself provides no

support for them.  The affidavit relates Ms. McBee's report that Defendant had threatened her

and her neighbor in December 2013, but nothing in the affidavit indicates that Defendant carried

out that threat using a firearm.  And though Ms. McBee stated that Defendant had threatened her

father and his employees with a gun, her report, as recounted in the affidavit, contains no clue

---

[31]*United States v. Snow*, 919 F.2d 1458, 1459 (10th Cir. 2008) (citing *United States v. Shomo*, 786 F.2d 981, 983 (10th Cir. 1986)).

[32]Doc. 26 at 3 n.3, 10.

[33]*Id.* at 3.

about when that threat occurred.  The affidavit also fails to show that Ms. McBee had a timely basis of knowledge for her assertion that Defendant "always carries a pistol in his pants and has numerous weapons": there is no indication of when Ms. McBee and Defendant split up, when they stopped living together, or when she obtained a protection order against him.  Perhaps Ms. McBee had remained close with Defendant until he threatened her in December 2013; perhaps regular contact between the two had ceased long before then.  It is possible, of course, that Defendant's reported possession of firearms coincided with some of the relatively recent events Ms. McBee described.  But without this information, the magistrate could only guess whether Defendant possessed a firearm in the months leading up to the apartment search.

The Court accepts the Government's contention that those who possess firearms tend to keep them for extended periods of time.[34]  The staleness doctrine, however, is not entirely inapplicable where a suspect has made a habit of carrying firearms in the past.[35]  To support a finding of probable cause for a search, therefore, an affidavit must provide some factual basis for determining when the suspect was last known to possess a firearm.  The affidavit's failure to do so in this case further weakens the inference that Defendant had a firearm on the day of the search.

3.      Nexus Between the Firearm and the Apartment

Defendant also contends that even if Ms. McBee's information was reliable and up to

---

[34]*See, e.g.*, *United States v. Lester*, 285 F. App'x 542, 546 (10th Cir. 2008) (finding probable cause, in part, because possession of a firearm is a continuing offense and because the affidavit stated that firearm silencers are typically kept by owners for an extended period of time); *United States v. Rahn*, 511 F.2d 290, 293 (10th Cir. 1975) (finding probable cause where the defendant had previously commented that the firearms in his possession would appreciate in value if kept for several years).

[35]*See, e.g.*, *Snow*, 919 F.2d at 1460 ("Ongoing and continuous activity makes the passage of time *less* critical." (emphasis added)).

date, the affidavit did not provide probable cause to believe a firearm would be found in the apartment at 431 Freeman.  Probable cause for a search warrant requires "a nexus between the contraband to be seized or suspected criminal activity and the place to be searched."[36]  A sufficient nexus exists where an affidavit "describes circumstances which would warrant a person of reasonable caution in the belief that the articles sought are at a particular place."[37]

Courts do not require "hard evidence or personal knowledge of illegal activity" to satisfy the nexus requirement.[38]  It is well-established, however, that probable cause to search "does not arise based solely upon probable cause that the person is guilty of a crime."[39]  Instead, "additional evidence" is needed to link the suspect's criminal activity to the place to be searched.[40]  Magistrates may, for example, rely on the opinions of law enforcement officers as to where a suspect is likely to keep certain items.[41]  "Additional evidence" connecting contraband to a place to be searched "may also take the form of inferences a magistrate judge reasonably draws from the Government's evidence."[42]  One of these two types of "additional evidence" is generally required to show probable cause to search a particular place in the absence of direct evidence that contraband is located there.[43]

---

[36]*United States v. Gonzales*, 399 F.3d 1225, 1228 (10th Cir. 2005).

[37]*Id.* (quotation marks and citation omitted).

[38]*See id.* (quotation marks and citation omitted).

[39]*United States v. Rowland*, 145 F.3d 1194, 1204 (10th Cir. 1998).

[40]*United States v. Biglow*, 562 F.3d 1272, 1279 (10th Cir. 2009).

[41]*Id.* at 1279.

[42]*Id.* at 1280.

[43]*See id.*

Here, the affidavit relates Ms. McBee's report that Defendant "always carries a pistol in his pants and has numerous weapons to include an AR15 assault type rifle and a Desert Eagle pistol."  Ms. McBee did not state that she had seen a firearm in the apartment at 431 Freeman or that a firearm had ever been present in that apartment before.  Thus, the affidavit does not purport to establish direct evidence or personal knowledge that a firearm was located in the apartment.  Detective Finley, further, did not express an opinion in the affidavit as to where Defendant was likely to keep firearms.  The Court will therefore consider whether the magistrate could reasonably infer from the facts presented in the affidavit that a firearm would be found in the apartment at 431 Freeman.

Most cases discussing inferences about where contraband might be found involve the search of a suspect's residence.[44]  Those cases reaffirm the general principle that probable cause to believe a suspect is guilty of a crime does not automatically furnish probable cause to search the suspect's residence for evidence of that crime.[45]  In *United States v. Rahn*,[46] however, the Tenth Circuit recognized that where probable cause exists to believe a suspect possesses firearms for personal use, it is reasonable to infer that he keeps those firearms in his residence.[47]  Personal uses for firearms include hunting and home security; a suspect keeping firearms for such purposes is reasonably likely to store them where he lives.[48]

---

[44]*See, e.g.*, *Rowland*, 145 F.3d at 1204; *United States v. Medlin*, 798 F.2d 407, 409 (10th Cir. 1986); *Anthony v. United States*, 667 F.2d 870, 872–73 (10th Cir. 1981).

[45]*See, e.g.*, *Rowland*, 145 F.3d at 1204; *United States v. Rahn*, 511 F.2d 290, 293 (10th Cir. 1975).

[46]511 F.2d 290 (10th Cir. 1975).

[47]*See id.* at 293–94.

[48]*See id.*

14

This case is unlike *Rahn*, however, because Detective Finley's affidavit does not show that Defendant was residing in Alecia Young's apartment at the time of the search. The affidavit, in fact, does not even demonstrate that Defendant was spending a substantial amount of time at the apartment. Rather, the affidavit indicates only that Defendant was present in the apartment at some point on February 3, 2014, and then again on February 6, 2014. As far as the Court can discern from the affidavit, these might have been isolated visits lasting only a couple of hours each. Had circumstances indicated that Defendant was treating Ms. Young's residence as his own or that he had been staying with Ms. Young for an extended period of time, *Rahn* might have provided a substantial basis for the conclusion that Defendant was storing firearms and other possessions in the apartment. But probable cause to search does not arise under *Rahn* where, as here, the facts set forth in the affidavit do not establish a fair probability that a suspect is residing in the place searched.[49]

A reasonable inference concerning the location of contraband may also arise where an affidavit presents facts tending to exclude the possibility that a suspect stores contraband in a place other than the one to be searched. In *United States v. Medlin*,[50] for example, a reliable informant reported that he had sold the suspect approximately thirty stolen guns over the course of one year.[51] Because the investigating officers determined that the suspect had no place of business where he might otherwise keep so many weapons, the Tenth Circuit found it reasonable

---

[49]*See id.*

[50]798 F.2d 407 (10th Cir. 1986).

[51]*Id.* at 408.

to infer that the suspect kept the guns at his home.[52]  Similarly, in *Anthony v. United States*,[53] the Tenth Circuit upheld the validity of a warrant authorizing officers to search a suspect's home for evidence of a wiretap device.[54]  Since the affidavit showed that the suspect assembled the device himself, the magistrate was reasonable to infer that the suspect needed a private place to do so; the magistrate was also reasonable to infer that place was probably the suspect's residence.[55]

In *United States v. Rowland*,[56] by contrast, the Tenth Circuit found that an affidavit for an anticipatory warrant failed to establish a sufficient nexus between a suspect's residence and an illegal video tape the suspect had ordered to his post office box.[57]  The affidavit in that case recounted police surveillance of the suspect and concluded that the suspect's usual practice was to pick up his mail at the post office box, take it back to the office building where he worked, then drive home after work.[58]  Though the court deemed it reasonable to infer that the suspect would be unlikely to view or store the video where he worked, and though it was possible the suspect would transport the tape to his residence after retrieving it from his post office box, the court found that the suspect's home "was but one of an otherwise unlimited possible sites for viewing or storage."[59]  Absent facts showing that the suspect's residence was at least a more

---

[52]*Id.* at 409.

[53]667 F.2d 870 (10th Cir. 1981).

[54]*Id.* at 872–73.

[55]*Id.* at 874–75.

[56]145 F.3d 1194 (10th Cir. 1998).

[57]*Id.* at 1205–06.

[58]*Id.*

[59]*Id.* at 1205.

likely storage place than the "otherwise endless possibilities," the inference that the suspect might take the tape home was insufficient to establish probable cause.[60]

Here, in contrast to *Medlin* and *Anthony*, Detective Finley's affidavit did not tend to reduce the probability that Defendant was storing firearms in some place other than the apartment at 431 Freeman.[61]  Instead, as in *Rowland*, Defendant might have been keeping firearms at any one of an unlimited number of possible sites.[62]  For reasons already expressed, in fact, the showing in this case is weaker than that in *Rowland*: Detective Finley's affidavit does not show that Defendant resided or spent a substantial amount of time at Alecia Young's apartment.[63]  The affidavit reveals only that Defendant was present at the apartment on two occasions over the course of a four-day period, and the Government suggests no reason Defendant would be especially likely to store firearms at a third party's residence where he was an occasional daytime guest.[64]  The affidavit, therefore, does not raise a reasonable inference that Defendant would store firearms at 431 Freeman rather than any other place Defendant happened to spend his time.

The Government contends the affidavit did not need to show probable cause that Defendant stored a firearm in the apartment.  Rather, in the Government's view, probable cause

---

[60]*See id.* at 1205–06.

[61]*See Medlin*, 798 F.2d at 409; *Anthony*, 667 F.2d at 874–75.

[62]*See* 145 F.3d at 1205.

[63]*Cf. id.* (finding probable cause did not exist to search the suspect's residence).

[64]*See id.*; *see also United States v. Pope*, 330 F. Supp. 2d 948, 956–57 (M.D. Tenn. 2004) ("The only connection between Mr. Pope's criminal activity at Moccasin Creek and his Pope Circle property is the natural suspicion that criminals may maintain evidence of their crimes anywhere they spend time, a suspicion that has been held insufficient [to establish probable cause].") (citing *United States v. Schultz*, 14 F.3d 1093, 1097–98 (6th Cir. 1994)).

that Defendant "always" carries a firearm on his person, and that his person was in the apartment on the day of the search, automatically conferred probable cause to search the entire apartment for a firearm.[65]  The Court disagrees.  To accept the Government's argument would be to authorize a probable cause search of the entirety of whatever premises Defendant happens to occupy at any particular time, regardless of his purpose for being there or the amount of time he plans to stay.  The Court declines to adopt that view.  Moreover, as the Court has already discussed, probable cause did not exist to believe Defendant had a firearm on his person on the day of the search.  The affidavit's failure to show that Ms. McBee provided reliable or timely information that Defendant possessed firearms further undermines the affidavit's already tenuous basis for linking firearms to the apartment at 431 Freeman.  Thus, considering the deficiencies in the affidavit in light of one another,[66] the Court cannot find a substantial basis for concluding that probable cause existed to search the apartment for firearms.  The Court holds the search warrant invalid.

> **B.**     **Leon *Good-Faith Exception***

Although the search warrant was not supported by probable cause, the Court finds that the firearm seized in the apartment need not be suppressed because of the good faith exception to the exclusionary rule set forth in *United States v. Leon*.[67]  In *Leon*, the Supreme Court held that the purpose of the exclusionary rule is to deter police misconduct and that "the suppression of

---

[65]Officers did not find the firearm on Defendant's person, but in a suitcase discovered in the apartment's master bedroom.  Doc. 26 at 5–6.

[66]*See United States v. Soderstrand*, 412 F.3d 1146, 1152 (10th Cir. 2005) (stating that courts should consider the totality of the information presented in the affidavit).

[67]468 U.S. 897 (1984).

evidence obtained pursuant to a warrant should be ordered . . . only in those unusual cases in which exclusion will further the purposes of the exclusionary rule."[68]  "Where an officer acting with objective good faith obtains a search warrant from a detached and neutral magistrate and the executing officers act within its scope, there is nothing to deter."[69]

The Supreme Court described four situations, however, in which an officer does not have reasonable grounds for believing a warrant was properly issued.[70]  Defendant argues one of those situations applies here.  Specifically, Defendant contends that the warrant was "based on an affidavit so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable."[71]  The Tenth Circuit has held that an officer's reliance on a warrant is "entirely unreasonable only if the affidavit submitted in support of the warrant is *devoid* of factual support."[72]  The Court's good-faith inquiry is limited "to the objectively ascertainable question whether a reasonably well trained officer would have known that the search was illegal despite the magistrate's authorization."[73]

The affidavit at issue here is not devoid of factual support.  First, like the tips provided in *Tuter* and *Danhauer*, Ms. McBee's report did contain some indicia of reliability.[74]  A named

---

[68]*Id.* at 916.

[69]*United States v. Nolan*, 199 F.3d 1180, 1184 (10th Cir. 1999) (citing *Leon*, 468 U.S. at 920–21).

[70]*See Leon*, 468 U.S. at 922–23.

[71]*Id.* at 923 (internal quotation marks and citation omitted).

[72]*See United States v. Henderson*, 595 F.3d 1198, 1201 (10th Cir. 2010) (emphasis in original) (quoting *United States v. Cardall*, 773 F.2d 1128, 1133 (10th Cir. 1985)) (internal quotation marks omitted).

[73]*See Leon*, 468 U.S. at 922 n.3.

[74]*See Tuter*, 240 F.3d at 1300 (finding the good-faith exception to the exclusionary rule applied because the officers might have reasonably believed that corroboration of innocent, readily observable facts reported by the anonymous tipster was sufficient to confer probable cause); *Danhauer*, 229 F.3d at 1007 (finding the good-faith

informant, Ms. McBee could be held responsible for fabricated allegations; her report was therefore entitled to greater weight than that of an anonymous tipster.[75]  The detective, moreover, corroborated some factual information Ms. McBee reported.  Though the corroborated fact was an "innocent" one, it was not a fact that was "readily observable to anyone on the street."[76]  Thus, considered with Ms. McBee's detailed description of the weapons Defendant reportedly carried, as well as Detective Finley's understanding that Ms. McBee was Defendant's ex-girlfriend, the detective was not unreasonable to conclude that Ms. McBee had a basis of knowledge for her statements and that the information she provided was generally reliable.[77]  Under the circumstances, a reasonably well-trained officer could have relied on the magistrate's determination that further corroboration was unnecessary.

In addition, though the language in the affidavit failed to provide a substantial basis for determining when Defendant last possessed a firearm, Detective Finley clarified at the suppression hearing that Ms. McBee's allegations in fact related to recent events.  According to the detective, Ms. McBee told him that both of the reported threats—including the threat involving Ms. McBee's father—occurred in December 2013.  Detective Finley testified that the failure of the affidavit to reflect that fact was the result of inartful phrasing on the part of the

---

exception applied because the officers took some steps to corroborate the informant's tip and because the affidavit "contain[ed] more than conclusory statements based on the informant's allegation about the alleged criminal activity at the Danhauer's residence").

[75]*See Florida v. J.L.*, 529 U.S. 266, 270 (2000) ("Unlike a tip from a known informant whose reputation can be assessed and who can be held responsible if her allegations turn out to be fabricated, an anonymous tip alone seldom demonstrates the informant's basis of knowledge or veracity." (internal quotation marks and citations omitted)).

[76]*Cf. United States v. Soto-Cervantes*, 138 F.3d 1319, 1323 (10th Cir. 1998).

[77]*See United States v. Jenkins*, 313 F.3d 549, 555 (2002) (finding an informant's report was entitled to some weight because some of the facts corroborated were not readily observable, but rather tended to show that the informant and the suspect had a relationship).

Johnson County assistant district attorney who, pursuant to county protocol, drafted the affidavit for the detective.  Detective Finley also testified that the attorney did not detail in the affidavit every piece of information the detective obtained during his investigation.  One omitted piece of evidence, according to the Government, was a police report showing Defendant had threatened Ms. McBee and her neighbor only twenty-five days before the search.[78]  The Court notes that Detective Finley was permitted to rely on the expertise of the assistant district attorney in applying for the search warrant.[79]  And though the detective perhaps should have reviewed the affidavit more carefully before signing it, he believed in good faith that the affidavit reflected his understanding that Defendant was seen with a firearm in the months leading up to the search.  In light of case law suggesting that firearm owners typically keep their weapons for an extended period of time,[80] Detective Finley had reason to think the relevant facts detailed in the affidavit were not stale.

Finally, the affidavit was not devoid of facts suggesting that Defendant stored a firearm at Alecia Young's apartment.  As just explained, the detective had reason to credit Ms. McBee's statement that Defendant "always" carried a firearm on his person and that he owned several guns.  The affidavit also shows that Defendant was present at Ms. Young's apartment on the day of the search and that he had been there on at least two of the four days preceding the search.  The affidavit, further, reflects the fact that Defendant was a fugitive in need of a place to stay.

---

[78]Doc. 26 at 3 n.3.

[79]*See Tuter*, 240 F.3d 1292, 1299–1300 (finding good faith, in part, because an officer relied on the opinion of an attorney in the United States Attorney's office that there existed probable cause for a search warrant).

[80]*See, e.g.*, *United States v. Lester*, 285 F. App'x 542, 546 (10th Cir. 2008); *United States v. Maxim*, 55 F.3d 394, 397–98 (8th Cir. 1995).

Under the circumstances, it was not unreasonable for Detective Finley to conclude that Defendant might choose to stay with a friend—perhaps one with whom Defendant had been in regular telephone communication and to whose apartment his cell phone had recently been traced.  And, if Defendant was indeed living in Ms. Young's apartment, it was reasonable to think he had stored at least one of his several firearms in the apartment as well.[81]  In the Court's view, of course, further investigation was necessary to establish probable cause that Defendant was treating Ms. Young's residence as his own at the time of the search.  But the affidavit was not totally devoid of facts raising that inference.  The Court, therefore, cannot say that it was entirely unreasonable for Detective Finley to rely on the magistrate's authorization to search the apartment for firearms.  The Court finds that Detective Finley relied on the warrant in good faith.

### C.      Overbreadth of the Warrant

Defendant also asserts, without explanation, that the warrant's authorization to search for "[f]irearms" was constitutionally overbroad.[82]  But the Tenth Circuit, like several other circuits, has found that where an affidavit states the suspect is a felon, a search for "any firearms" is not overbroad: general references are permissible where the sole purpose of the search is to seize illicit property or contraband.[83]  Because the affidavit at issue here revealed that Defendant was a felon, and because any firearm found in his possession would therefore be contraband, the Court

---

[81]*See United States v. Rahn*, 511 F.2d 290, 293–94 (10th Cir. 1975) (finding that where probable cause existed to believe the suspect possessed firearms for personal use, it was reasonable to infer that he would store those firearms at his home).

[82]Doc. 23 at 4.

[83]*See, e.g.*, *United States v. Jimenez*, 205 F. App'x 656, 662 (10th Cir. 2006) (citing *United States v. Campbell*, 256 F.3d 381, 389 (6th Cir. 2001)); *see also United States v. Smith*, 62 F. App'x 419, 422 (3d Cir. 2003); *United States v. Morris*, 977 F.2d 677, 680–81 (1st Cir. 1992).  Though *Jimenez* is an unpublished decision, the Court finds its reasoning persuasive.

finds that the warrant was not overbroad.

**IT IS THEREFORE ORDERED** that Defendant's Motion to Suppress Evidence (Doc.

23) is denied.

Dated: January 6, 2015

S/ Julie A. Robinson
JULIE A. ROBINSON
UNITED STATES DISTRICT JUDGE

23