FILED
**United States Court of Appeals**
**Tenth Circuit**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**

**February 27, 2018**

**Elisabeth A. Shumaker**
**Clerk of Court**

_____

| | |
|---|---|
| UNITED STATES OF AMERICA, | |
|     Plaintiff - Appellee, | |
| v. | No. 16-3324 |
| | (D.C. No. 2:14-CR-20022-JAR-1) |
| JEMEL T. KNOX, | (D. Kan.) |
|     Defendant - Appellant. | |

_____

**JUDGMENT**
_____

Before **BRISCOE**, **EBEL**, and **MATHESON**, Circuit Judges.
_____

This case originated in the District of Kansas and was argued by counsel.

The judgment of that court is affirmed.

If defendant, Jemel T. Knox, was released pending appeal, the court orders that,
within 30 days of this court's mandate being filed in District Court, the defendant shall
surrender to the United States Marshal for the District of Kansas. The District Court may,
however, in its discretion, permit the defendant to surrender directly to a designated
Bureau of Prisons institution for service of sentence.

Entered for the Court

ELISABETH A. SHUMAKER, Clerk

FILED
United States Court of Appeals
Tenth Circuit

February 27, 2018

Elisabeth A. Shumaker
Clerk of Court

**PUBLISH**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**

_____

UNITED STATES OF AMERICA,

     Plaintiff - Appellee,

v.

JEMEL T. KNOX,

     Defendant - Appellant.

No. 16-3324

_____

Appeal from the United States District Court
for the District of Kansas
(D.C. No. 2:14-CR-20022-JAR-1)
_____

Daniel T. Hansmeier, Appellate Chief (Melody Brannon, Federal Public Defender, Chekasha Ramsey, Assistant Federal Public Defender, with him on the briefs), Kansas Federal Public Defender, Kansas City, Kansas, appearing for Appellant.

Jared S. Maag, Assistant United States Attorney (Thomas E. Beall, United States Attorney with him on the brief), Office of the United States Attorney, Topeka, Kansas, appearing for Appellee.

_____

Before **BRISCOE**, **EBEL**, and **MATHESON**, Circuit Judges.
_____

**EBEL**, Circuit Judge.
_____

     Defendant Jemel Knox was indicted in 2014 on one count of possession of a

firearm by a convicted felon under 18 U.S.C. § 922(g)(1).  He moved to suppress the

firearm that formed the basis for this charge as the product of an unconstitutional search.

The firearm had been seized during the execution of a search and arrest warrant issued by a Kansas state magistrate. The district court held that although there was insufficient evidence of probable cause to justify the warrant, the officers executing the warrant were entitled to rely in good faith on the magistrate's probable cause determination and the firearm was not subject to suppression. After his motion was denied, Knox entered a conditional guilty plea which preserved his right to appeal the district court's suppression decision. Exercising jurisdiction under 28 U.S.C. § 1291, we AFFIRM the district court.

## I.   BACKGROUND

In mid-January 2014, after Jemel Knox failed to appear in Johnson County District Court on a state charge, the merits of which are unrelated to this appeal, Kansas officers discovered that Knox had cut off his GPS monitor and fled from the apartment at which he had been staying. Based on these events, a Kansas court issued a warrant for Knox's arrest, and Detective Kevin Finley from the Johnson County Sheriff's office was assigned to locate Knox and take him into custody.

### A. The Investigation

Detective Finley's investigation took two primary tacks. First, Finley obtained an order to track a phone number he believed to be Knox's. On February 1, 2014, the phone was turned on, and several phone calls were placed to Lindsey Kurtz—with whom Knox had previously been living—and a young woman named Alecia Young.

Two days later, on February 3, 2014, technicians tracked Mr. Knox's phone to the general vicinity of an apartment complex located at 431 Freeman Ave., Wyandotte County, Kansas City, Kansas.

On February 6, 2014, police received a "ping" from Mr. Knox's cell-phone that placed him at 431 Freeman. As Detective Finley told the magistrate in seeking a warrant to search 431 Freeman based in part on this information, a "ping" is "a notification from T-Mobile that the phone is active and turned on and provides a distance between the nearest cell phone tower and the phone." (R. Vol. I at 36) ("Finley Aff.") ¶ 10. In this case the "ping" was accurate within a range of six meters. Officers then confirmed that Ms. Young resided at 431 Freeman, and observed a white Cadillac in the parking lot registered to Ms. Kurtz.

The second aspect of Detective Finley's investigation involved speaking with a former girlfriend of Knox's, Cynthia McBee. Ms. McBee indicated that Knox had "become violent with her lately," that he had threatened her and her neighbor on one occasion, and her father on another, and that he "always" carries a firearm. (Finley Aff. ¶ 4). As a previously convicted felon, Knox is prohibited from possessing firearms. Id. ¶ 1

On the basis of this investigation, Detective Finley swore an affidavit in Johnson County District Court, and a judicial warrant was issued on February 6, 2014 authorizing the search of 431 Freeman "to obtain the person of Jemel T. Knox," and the seizure of "The body of Jemel T. Knox" and "Firearms." (R. Vol. I at 37.)

3

## B. The Search

That same afternoon Detective Finley and other Kansas officers executed the warrant.  The officers found Knox hiding underneath the bed in the master bedroom and took him into custody.  After his arrest, the officers searched the residence and seized a rifle from a suitcase located on the floor next to the bed under which Knox had been hiding.  On this basis the United States indicted Knox on one count of being a felon in possession of a firearm in violation of § 922(g)(1).[1]

## C. The Motion to Suppress

At the district court, Knox moved to suppress the rifle, arguing that Detective Finley's affidavit did not provide probable cause that a firearm would be located at 431 Freeman.[2]  The district court agreed that the affidavit did not establish probable cause.  The court based its decision on three things: (1) there was no information in the affidavit to establish Ms. McBee's reliability, (2) there was no information in the affidavit to establish the timeliness of Ms. McBee's assertions, particularly that the defendant "always" carried a gun, and (3) there was no information in the affidavit to establish a nexus between the firearm and 431 Freeman.

---

[1] Knox was also charged with receiving and possessing an unregistered firearm in violation of 26 U.S.C. §§ 5841, 5861(d), 5861(f), and 5871, but that charge was later dismissed.

[2] The weapon was ultimately discovered near where Knox had been hiding from officers. However, it was not argued that the rifle was validly seized pursuant to the search-incident-to-arrest exception to the warrant requirement.  That exception only applies when the search and the arrest are substantially contemporaneous.  See, e.g., Lavicky v. Burnett, 758 F.2d 468, 474 (10th Cir. 1985).  Because the seizure of the rifle here occurred well after Knox had been arrested and removed from the house, that exception does not apply and it was not argued here.

The district court nonetheless declined to suppress the firearm, deciding instead to apply the good-faith exception to the warrant requirement.  In doing so, the court considered not only the information in Detective Finley's affidavit, but also information gleaned from Detective Finley at the suppression hearing that was not included in the affidavit, specifically: (1) that the affidavit had been prepared by an assistant district attorney, (2) the threat to Ms. McBee's father occurred less than two months prior to the warrant application, and (3) that a police report corroborated Ms. McBee's story about the threat to her and her neighbor.

Considering these facts alongside the information in the affidavit, the district court could not say it was "entirely unreasonable for Detective Finley to rely on the magistrate's authorization to search the apartment for firearms." (R. Vol. I at 83.) Therefore, it applied the Leon[3] good-faith exception to the warrant requirement. Following this ruling, Knox entered a conditional guilty plea to one count of being a felon in possession, judgment was entered, and Knox perfected our appellate jurisdiction by timely appealing.

## II.    DISCUSSION

The basic question presented in this appeal is whether the Leon good-faith exception to the warrant requirement should apply to the firearm found at 431 Freeman.  Before reaching this question, however, we first address the standard of review on appeal, and whether it was appropriate for the district court to consider information outside the affidavit in assessing the executing officer's good-faith.

---

[3] United States v. Leon, 468 U.S. 897, 922 (1984).

**A. The standard of review is de novo.**

Under ordinary circumstances we review a district court's application of the good-faith exception to the warrant requirement de novo.  See United States v. Augustine, 742 F.3d 1258, 1262 (10th Cir. 2014) (citing United States v. Danhauer, 229 F.3d 1002, 1005 (10th Cir. 2000)).  This standard, however, is predicated on the appellant having objected to the challenged action at the district court.  United States v. Burgess, 576 F.3d 1078, 1096 (10th Cir. 2009).

 Here, there is no question that Knox objected to the weapon being introduced into evidence against him.  Furthermore, Knox's suppression motion adequately considered, addressed, and briefed whether the good-faith exception would apply were the district court to find—as it did—that the warrant lacked probable cause. The government argues, nonetheless, that Knox's Leon argument on appeal is subject to plain-error review.

The government's position is predicated on the *form* of Knox's argument against the application of the good-faith exception, namely that he did not elaborate sufficiently on his argument that the district court was wrong to consider information beyond the scope of the affidavit.  However, the government's characterization of Knox's arguments below as deficient is incorrect, so we need not address whether an insufficient elaboration would trigger a plain error standard of review.

In his Reply to the Government's Response to Defendant's Motion to Suppress, Knox says: "the reviewing Court must examine 'the text of the warrant and the affidavit to ascertain whether the agents might have 'reasonably presume[d] it to

6

be valid.' Any additional information that Detective Finley possessed, as well as information provided by the Government, is irrelevant to [the suppression] Court's determination."  (R. Vol. I at 59–60) (quoting United States v. Corral-Corral, 899 F.2d 927, 932 (10th Cir. 1990) (internal quotations omitted)).

Furthermore, at the suppression hearing, defense counsel objected multiple times to Detective Finley's testimony regarding information that would tend to support probable cause but was not included in the affidavit nor presented orally to the issuing magistrate.  Counsel's basis for doing so was that it was "not relevant as to the proceeding, what additional information was provided to the [issuing] judge outside the four corners of the [affidavit.]"  (R. Vol. I at 107–10).  During her colloquy with the suppression judge following testimony, defense counsel further argued that "[i]f the [suppression] Court finds that the *affidavit* was devoid of any facts that would establish the probability of evidence that the criminal activity would be located in that desired search area, then the Leon good-faith exception does not apply . . . [notwithstanding] additional information given to the [suppression] Court to now establish this nexus."  (Id. 126–27) (emphasis added).  It is possible to cite several more instances where defense counsel either in writing or orally described the standard as whether the *affidavit* was so lacking in indicia of probable cause as to render the officer's belief in the existence of probable cause unreasonable. See, e.g., R. Vol. I at 73 (emphasis added).

Accordingly we decline the government's invitation to review the district

court's decision for plain error.  We will consider the district court's application of

the good-faith exception de novo.  Augustine, 742 F.3d at 1262.[4]

## B. The district court erred in considering information not disclosed under oath to the issuing magistrate.

In determining that Detective Finley acted in good-faith reliance on the

approved warrant, the suppression court apparently relied in part on information

allegedly known to the detective at the time he sought the warrant, but not included

in his affidavit in support of the warrant application or otherwise provided under oath

to the issuing magistrate.  (R. Vol. I at 82) ("Detective Finley also testified that the

attorney did not detail in the affidavit every piece of information the detective

obtained during his investigation.").

Specifically, there are three facts the suppression court may have considered in

its good-faith analysis that were not provided under oath to the issuing magistrate:

1. The affidavit was prepared in consultation with an Assistant District Attorney,

    who chose what information to include in the affidavit and what information

    not to include in the affidavit.[5]

---

[4] Both parties agree, regardless of any confusion created by language we have
included in previous cases, see, e.g., United States v. Danhauer, 229 F.3d 1002, 1005
(10th Cir. 2000), that this de novo review does not involve viewing the evidence "in
the light most favorable to the government," Gov't Br. at 31–32 (detailing the source
of the confusion and concluding that "there is no question" that good-faith review is
entirely de novo without deference to the government).

[5] We agree with both parties that this information, relating to the so-called "warrant
application process" may be considered by a suppression court in assessing an
officer's good-faith reliance on a warrant.  Cf. Messerschmidt v. Millender, 565 U.S.

2. The detective knew that the threats to Ms. McBee, her neighbor, her father, and her father's co-workers all occurred in December of 2013, and all likely included weapons.

3. A police report obtained by Detective Finley corroborated Ms. McBee's assertion that the defendant had threatened her and her neighbor twenty-five days before the search.

In general, even if a warrant is not supported by probable cause, evidence seized in good-faith reliance on that warrant is not subject to suppression.  United States v. Leon, 468 U.S. 897, 922 (1984)).  However, an exception to this general rule is that "when the affidavit in support of the warrant is 'so lacking in indicia of probable cause as to render official belief in its existence unreasonable[,]'" the officer cannot be said to have acted in good-faith reliance on the magistrate's determination, and suppression is appropriate.  Danhauer, 229 F.3d at 1007 (10th Cir. 2000) (quoting Leon, 468 U.S. at 923).

At issue here is whether, in assessing this exception, the suppression court may consider information known to the officer when he executed the deficient warrant but not disclosed in the affidavit or otherwise sworn to the issuing magistrate.  The Tenth Circuit has not unequivocally resolved this question.

---

535, 553–55 (2012) (holding in the qualified immunity context that having secured the approval of their warrant application from both a superior and a deputy district attorney was "certainly pertinent in assessing whether [the officers] could have held a reasonable belief that the warrant was supported by probable cause").

Our most extensive discussion of this issue can be found in United States v. Danhauer, 229 F.3d 1002, (10th Cir. 2000).  In Danhauer, we held an affidavit insufficient to establish probable cause because the allegations it contained from a confidential informant did not bear sufficient indicia of reliability or independent corroboration of the informant's information.  229 F.3d at 1006.  We nonetheless upheld the denial of the suppression motion on Leon good-faith grounds because the affidavit contained "more than conclusory statements based on the informant's allegation about the alleged criminal activity."  Id. at 1007.  Our decision, then, rested on the information contained within the four corners of the affidavit.  See also id. at 1006 (describing suppression court's responsibility as to review the "underlying documents" to determine whether they meet the Leon standard).

However, in dicta, we noted that "the absence of information establishing the informant's reliability or basis of knowledge does not necessarily preclude an officer from manifesting a reasonable belief that the warrant was properly issued, particularly when the officer takes steps to investigate the informant's allegations." Id. at 1007.  At least arguably, then, Danhauer leaves open the question of whether a suppression court, in conducting a Leon analysis, may consider information known to an executing officer but not sworn to the issuing magistrate.

Since Danhauer, a series of unpublished opinions have further failed to provide clarity.  Our clearest language can be found in United States v. Martinez-Martinez, 25 F. App'x 733, 737 (10th Cir. 2001) (unpublished) in which we held that when "determining whether Leon's good faith exception applies, the question is not

10

what is absent from the affidavit, but what is present." Five years later another unpublished opinion included dicta which could arguably be read to support the opposite conclusion. United States v. Perry, 181 F. App'x 750, 753 (10th Cir. 2006) (unpublished) ("[A] well-trained officer who knew facts establishing probable cause could reasonably err in relying on approval of a warrant based on an affidavit that inadvertently omitted some of those facts.").[6] Reviewing our binding and non-binding precedent in 2009, one panel of this Court acknowledged that the question of whether a suppression court could consider information not disclosed to the issuing magistrate "remains an open one in our circuit." United States v. Burgess, 357 F. App'x 974, 978 (10th Cir. 2009) (unpublished) (holding on plain-error review that the lack of a resolution in the circuit precluded a finding of plain error).

From this review, it is clear our own precedent provides no clear resolution for our present inquiry. Beyond our own geographic boundaries, this is a question that has split our sister circuits. In the Seventh and Ninth Circuits, judges may not consider information unless it is presented to the warrant-issuing magistrate. See, e.g., United States v. Koerth, 312 F.3d 862, 871 (7th Cir. 2002); United States v.

---

[6] The Perry court's decision to apply the Leon exception did not have to rest on the existence of factual information known to the officer but not included in the affidavit. 181 F. App'x at 753. Rather, the Court held that the information contained in the affidavit, even without the information known to the officer but not included, "provide[d] significant corroboration to the [confidential informant's] assertion[.]" Id.

Hove, 848 F.2d 137, 140 (9th Cir. 1988).[7]  The reasoning adopted by these courts is

that the relevant Leon exception is an *objective* consideration of whether the affidavit

and any accompanying sworn information is "so lacking in indicia of probable cause

as to render official belief in its existence entirely unreasonable."  Leon, 468 U.S. at

923 (quoting Brown v. Illinois, 422 U.S. 590, 610–11 (1975) (Powell, J., concurring

in part)).

　　　　In the Fourth, Eighth, and Eleventh Circuits, however, district courts are

allowed to consider uncontroverted facts known to the officers who executed the

warrant but inadvertently not disclosed to the issuing judge.  See, e.g., United States

v. McKenzie-Gude, 671 F.3d 452, 460 (4th Cir. 2011); United States v. Robinson,

336 F.3d 1293, 1297 n.6 (11th Cir. 2003); United States v. Marion, 238 F.3d 965,

969 (8th Cir. 2001).  These circuits reasoned that not to consider such information

"risks the anomalous result of suppressing evidence 'obtained pursuant to a warrant

---

[7] The Sixth Circuit arguably also lies on this side of the split.  In 2005 that court held that "a determination of good-faith reliance . . . must be bound by the four corners of the affidavit."  United States v. Laughton, 409 F.3d 744, 751 (6th Cir. 2005). It later softened this approach, holding that suppression courts could consider information disclosed to the issuing judge but not included in the affidavit.  United States v. Frazier, 423 F.3d 526, 535 (6th Cir. 2005).  In explaining its reasoning, the Sixth Circuit quoted one case from the Eighth Circuit that permits consideration of *all* information known to an executing officer.  Id. at 536 (quoting United States v. Marion, 238 F.3d 965, 969 (8th Cir. 2001) (internal quotation marks omitted) ("When assessing the objective [reasonableness] of police officers executing a warrant, we must look to the totality of the circumstances, including any information known to the officers but not presented to the issuing judge.")).  District courts in the Sixth Circuit have generally interpreted Frazier to stand for the proposition that information outside the four corners of the affidavit can be considered only when that information had been disclosed to the issuing magistrate.  See, e.g., United States v. Wilhere, 89 F. Supp. 3d 915, 920 n.4 (E.D. Ky. 2015).

supported by the affidavit of an officer, who, in fact, possesses probable cause, but inadvertently omits some information from his affidavit.'" McKenzie-Gude, 671 F.3d at 460 (quoting United States v. Bynum, 293 F.3d 192, 199 (4th Cir. 2002)).[8]

After reviewing these authorities and our own discussions on the issue, we return nonetheless to the plain text of Leon itself.  In outlining an exception to the general rule of Leon which allowed an officer's good faith reliance on a defective affidavit, the Court specified that reliance is not allowed when a reviewing court determines the officer did not "manifest *objective* good-faith" because the "*affidavit* [was] 'so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable.'" Leon, 468 U.S. at 923 (emphasis added) (quoting Brown, 422 U.S. at 610–11).  Elsewhere the Leon Court talks about the requirement that "the officer's reliance on the magistrate's probable-cause determination and on the technical sufficiency of the warrant he issues must be *objectively* reasonable." Leon, 468 U.S. at 922 (emphasis added).  In a lengthy footnote, the Court decides to "eschew inquiries into the subjective beliefs of law enforcement officers who seize evidence pursuant to a subsequently invalidated warrant[, believing] that 'sending state and federal courts on an expedition into the minds of police officers would produce a grave and fruitless misallocation of judicial resources.'" Id. at 922 n.23 (quoting Massachusetts v. Painten, 389 U.S. 560, 565 (1968) (White, J., dissenting)).

---

[8] For a survey of the split as of 2005, see John E. Taylor, Using Suppression Hearing Testimony to Prove Good Faith Under *United States v. Leon*, 54 U. Kan. L. Rev. 155, 174–84 (2005).

This comports with the Court's general trend of preferring objective tests of law enforcement reasonableness over subjective inquiries into the knowledge or motivations possessed by individual officers. See, e.g., Whren v. United States, 517 U.S. 806, 813 (1996) ("Subjective intentions play no role in ordinary, probable-cause Fourth Amendment analysis.").

Accordingly, based on the plain text of Leon, we hold that a suppression court's assessment of an officer's good faith is confined to reviewing the four corners of the sworn affidavit and any other pertinent information actually shared with the issuing judge under oath prior to the issuance of the warrant, as well as information relating to the warrant application process.[9] Not only is this rule faithful to the text of Leon, it will enhance administrability and encourage law enforcement officers to provide issuing courts with the type of comprehensive affidavits upon which proper probable cause determinations should rest. See Illinois v. Gates, 462 U.S. 213, 239 (1983) (holding an affidavit "must provide the magistrate with a substantial basis for determining the existence of probable cause" and that "wholly conclusory"

---

[9] In assessing good faith a suppression court must ask whether "the magistrate so obviously erred that any reasonable officer would have recognized the error." Messerschmidt v. Millender, 565 U.S. 535, 556 (2012). Our opinion does not restrict a suppression court's ability to receive testimony illuminating how a reasonable officer would interpret factual information contained in an affidavit. Our holding today only precludes a suppression court from considering new factual information that is undisclosed to the issuing magistrate. In fact, we believe this is the most appropriate reading of Danhauer: That a suppression court may consider information known generally to reasonable officers that sheds light on the reasonableness of an officer's reliance on a warrant, but may not consider new factual information that was not disclosed to the issuing magistrate. See 229 F.3d at 1006; see also footnote 5 (discussing the availability of so-called "warrant application" information).

statements about the officer's beliefs are insufficient).  We therefore confine our

good-faith inquiry in this case to whether the affidavit itself is sufficiently detailed to

merit application of the good-faith exception to the warrant requirement.

### C. Here, the affidavit had enough indicia of reliability to support Detective Finley's good-faith reliance on the magistrate's warrant.

While the Fourth Amendment offers people the right to be "secure in their

persons, houses, papers, and effects, against unreasonable searches and seizures," the

amendment is silent as to what repercussions should follow a violation of that right.

U.S. Const. amend. IV.  In response, courts have created the exclusionary rule, under

which "evidence obtained in violation of the Fourth Amendment cannot be used in a

criminal proceeding against the victim of the illegal search and seizure."  United

States v. Calandra, 414 U.S. 338, 347 (1974) (citing Weeks v. United States, 232

U.S. 383 (1914)).

The exclusionary rule, however, is not itself a constitutional guarantee.  The

constitutional violation occurs when an unreasonable search occurs, not when

evidence seized in the course of that search is later introduced in a subsequent

criminal proceeding.  Penn. Bd. of Probation & Parole v. Scott, 524 U.S. 357, 362

(1998).  "Instead, the [exclusionary] rule's prime purpose is to deter future unlawful

police conduct and thereby effectuate the guarantee of the Fourth Amendment against

unreasonable searches and seizures[.]"  Calandra, 414 U.S. at 347.  Put succinctly,

the exclusionary rule is not a constitutional right of the defendant, but rather is a

disincentive for law enforcement to engage in unconstitutional activity.

Therefore, whether to apply the exclusionary rule in a given case turns on whether such application will be an effective deterrent against future Fourth Amendment violations.  Herring v. United States, 555 U.S. 135, 141 (2009) (citing Stone v. Powell, 428 U.S. 465, 486 (1976); Calandra, 414 U.S. at 347–55).  Even when exclusion would provide deterrence, courts must further inquire whether the benefits of that deterrence outweigh the "substantial social costs"— of excluding relevant and incriminating evidence of wrongdoing.  Herring, 555 U.S. at 141 (quoting Illinois v. Krull, 480 U.S. 340, 352–53 (1987)).  Ultimately, then, for the exclusionary rule to apply, "police conduct must be sufficiently deliberate that exclusion can meaningfully deter it, and sufficiently culpable that such deterrence is worth the price paid by the justice system."  Herring, 555 U.S. at 144.

Conducting this balancing in Leon, the Supreme Court concluded that when a law enforcement officer relies in objective good faith on a warrant issued by a detached and neutral magistrate, and that warrant is later invalidated as not being supported by probable cause, evidence obtained as a result of that reliance should not be subject to suppression.  Leon, 468 U.S. at 922.  This rule, which became known as the Leon good-faith exception to the warrant requirement, recognizes that ordinarily an officer "cannot be expected to question the magistrate's probable-cause determination or his judgment that the form of the warrant is technically sufficient." Id. at 921.

One exception to the general rule of Leon holds that evidence will be suppressed notwithstanding the warrant "when the affidavit in support of the warrant

is so lacking in indicia of probable cause as to render official belief in its existence

entirely unreasonable." United States v. Edwards, 813 F.3d 953, 970 (10th Cir.

2015) (quoting United States v. Augustine, 742 F.3d 1258, 1262 (10th Cir. 2014)). [10]

Given the "substantial social costs" of exclusion, Herring, 555 U.S. at 141, this

exception applies not when an officer's reliance on the warrant is merely

"misplaced," but rather only when his reliance is so "wholly unwarranted that good

faith is absent[,]" United States v. Corral-Corral, 899 F.2d 927, 938–39 (10th Cir.

1990) (quoting United States v. Cardall, 773 F.2d 1128, 1133 (10th Cir. 1985)).  The

Supreme Court has recently admonished that "the threshold for establishing this

exception [to Leon admissibility] is a high one, and it should be. . . . [Because] '[i]n

the ordinary case, an officer cannot be expected to question the magistrate's

probable-cause determination.'" Messerschmidt, 565 U.S. at 547 (quoting Leon, 468

U.S. at 923)).  In recognition of this high standard, we have said that an officer is

wholly unwarranted in relying on a warrant "only if the affidavit submitted in support

---

[10] There are four exceptions to the general rule of Leon:

> (1) when the issuing magistrate was misled by an affidavit containing
> false information or information that the affiant would have known was
> false if not for his reckless disregard of the truth; (2) when the issuing
> magistrate wholly abandon[s her] judicial role; (3) when the affidavit in
> support of the warrant is so lacking in indicia of probable cause as to
> render official belief in its existence entirely unreasonable; and (4)
> when a warrant is so facially deficient that the executing officer could
> not reasonably believe it was valid.

United States v. Edwards, 813 F.3d 953, 970 (10th Cir. 2015) (quoting United States
v. Augustine, 742 F.3d 1258, 1262 (10th Cir. 2014)).

of the warrant is *devoid* of factual support." <u>United States v. Henderson</u>, 595 F.3d 1198, 1201-02 (10th Cir. 2010).[11]

Knox urges us to suppress the rifle because no reasonable officer could have believed that the affidavit which the magistrate found to establish probable cause to search 431 Freeman for weapons actually established probable cause that weapons would be located at this address. (Aplt. Br. at 32–45.) Paragraph four of the affidavit, the only paragraph that discusses the likelihood weapons will be found at 431 Freeman, relies on the statements of Cynthia McBee, a former girlfriend of Knox's.

> 4. On 01/22/2014, affiant contacted a previous girlfriend of Knox's, Cynthia McBee. She advised she and Knox broke up and no longer lived together. She advised that Knox had become violent with her lately and she had a Protection Order issued against him. She did advise he always carried a gun and had threatened her and her neighbor in December. He had also gone to her father's job in Kansas City, Missouri and threatened him and his employees with a gun. She said he always carries a pistol in his pants and has numerous weapons to include an AR15 assault type rifle and a Desert Eagle pistol. Cynthia did advise that Knox had numerous girlfriends and most were only known by their street names. She did provide two friends names of

---

[11] Defendant urges us not to employ this standard, arguing that "it allows district courts to identify *any* fact within the affidavit to support the application of the good-faith exception, even a fact that this Court has rejected as sufficient to establish probable cause." Aplt. Br. at 30 n.6. We disagree with this characterization of our precedent. Law enforcement officers are responsible for having a "reasonable knowledge of what the law prohibits," <u>Leon</u>, 468 U.S. at 919 n.20, and for conforming their conduct to these rules, <u>Davis v. United States</u>, 564 U.S. 229, 241 (2011). The "devoid of factual support" standard does not mean that the district court may use facts clearly insufficient to establish probable cause as a reason to nonetheless apply the good-faith exception. A fact that is clearly insufficient to support probable cause under settled law is not "factual support" for a warrant absent context or other facts which, in total, could support the good-faith exception.

Michael Dupree Jr, and Alecia Young. Cynthia was able to identify both parties by Knox's Facebook posts that the officer provided.

(Finley Aff. ¶ 4.)

"An affidavit establishes probable cause for a search warrant if the totality of the information it contains establishes the 'fair probability that contraband or evidence of a crime will be found in a particular place.'" United States v. Soderstrand, 412 F.3d 1146, 1152 (10th Cir. 2005) (quoting United States v. Rice, 358 F.3d 1268, 1274 (10th Cir. 2004), judgment vacated on other grounds, 543 U.S. 1103 (2005)). Whether probable cause exists in a given case is a "flexible, common-sense standard," and no single factor or factors is dispositive. Illinois v. Gates, 462 U.S. 213, 238–39 (1983).

In this circuit, we have identified three non-exclusive considerations that help guide a probable cause inquiry, particularly one in which the affiant relies on an informant or other witness's information:[12] 1) the reliability of the informer, 2) the

_____

[12] There is a difference between traditional informants, who are often themselves criminals, and "citizen-informers," who are generally witnesses or victims rather than associates. See, e.g., United States v. Neff, 300 F.3d 1217, 1221 (10th Cir. 2002) (citing 2 Wayne R. LaFave, Search and Seizure: A Treatise on the Fourth Amendment § 3.3, at 88–89 (3d ed. 1996)). Ms. McBee is almost certainly an example of the latter, rather than the former, and we have previously noted that these citizen-informers tend to be more reliable than traditional informants, particularly when their information derives from first-hand knowledge. See Neff, 300 F.3d at 1221; LaFave, supra, § 3.4 ("Courts are much more concerned with veracity when the source of the information is an informant from the criminal milieu rather than an average citizen who has found himself in the position of a crime victim or witness."). Regardless, we have no occasion to decide into which category Ms. McBee should be placed, because we find that her information bears sufficient indicia of reliability for Leon purposes regardless of whether we asses it as that of an informer, or as that of a fact witness.

timeliness of the informer's allegations, and 3) the nexus between the item to be seized and the place to be searched.  See United States v. Pulliam, 748 F.3d 967, 971 (10th Cir. 2014) (reliability); United States v. Snow, 919 F.2d 1458, 1459 (10th Cir. 1990) (timeliness); United States v. Gonzales, 399 F.3d 1225, 1228 (10th Cir. 2005) (nexus).  Our inquiry is not whether the information in paragraph four in fact establishes probable cause that an illegal weapon will be found at 431 Freeman, but rather whether the affidavit is so facially deficient that reliance on a warrant issued in response to that affidavit cannot have been in good faith.

### 1.  Reliability of the Informer

We have said that where, as here, the information contained in a warrant application comes largely from an informer, "we pay close attention to the veracity, reliability, and basis of knowledge of the informant about the target of the proposed search." Pulliam, 748 F.3d at 971 (citing Gates, 462 U.S. at 230).  We consider an informer more reliable if she is willing to identify herself to authorities, Pulliam, 748 F.3d at 971, 971 n.2 (citing United States v. Johnson, 364 F.3d 1185, 1190 (10th Cir. 2004)), and the affiant is able to identify or at least describe her to the magistrate. And while hearsay evidence can support probable cause, the most powerful basis of knowledge for an informer is personal knowledge of the alleged wrongdoing, see Pulliam, 748 F.3d at 971.

Here, the informer, Ms. McBee, spoke from personal knowledge about the defendant's gun habits.  As a former girlfriend she expressed knowledge of Knox's routines and whether he frequently carried firearms on his person.  She spoke with

specificity about the particular types of weapons Knox was known to carry.

Furthermore, while corroboration of non-predictive information cannot itself

establish sufficient reliability for probable cause, see, e.g., United States v. Tuter,

240 F.3d 1292, 1297 (10th Cir. 2001), Detective Finley was able to corroborate Ms.

McBee's information about the friendship between Knox and Young.

Knox encourages us to hold that Ms. McBee's statements were particularly un-

reliable because she was the defendant's ex-girlfriend, and therefore "a reasonably

well trained [sic] officer would have viewed her statements with skepticism." (Aplt.

Br. at 35–36).  We decline to do so.  The only Tenth Circuit case cited by Knox for

this proposition does not cast doubt upon an ex-girlfriend's allegations because of her

status as an ex-girlfriend, but rather because of the general unreliability of her

particular statements.  United States v. Fennell, 65 F.3d 812, 813 (10th Cir. 1995).

Furthermore, Fennell is easily distinguishable from the case at bar for two reasons.

First, in Fennell, authorities were unable to corroborate any aspect of the ex-

girlfriend's unsworn testimony.  Here, Detective Finley was able to corroborate Ms.

McBee's allegation of a relationship between Knox and Young.  Second, the officer

in Fennell spoke with the ex-girlfriend over the phone, and thus "did not have an

opportunity to observe her demeanor during the interview and therefore could not

form any opinion as to her veracity."  65 F.3d at 813.  Here, Detective Finley

apparently spoke with Ms. McBee in person, offering him an opportunity to gauge

her reliability.[13]  Accordingly, we decline to hold—or even suggest—that statements from ex-girlfriends are somehow less reliable than those from other sources.[14]

Therefore, based on Ms. McBee's personal knowledge of Knox's habits, acquired through the close proximity of a personal relationship, the information she provided bore some indicia of reliability.

### 2. Timeliness

Regardless of the source of the information, probable cause "cannot be based on stale information that no longer suggests that the items sought will be found in the place to be searched."  Snow, 919 F.2d at 1459–60 (citing United States v. Shomo, 786 F.2d 981, 983 (10th Cir. 1986)).  Whether information is sufficiently stale to foreclose probable cause "depends on the nature of the criminal activity, the length of the activity, and the nature of the property to be seized."  Snow, 919 F.2d at 1460 (internal quotation marks omitted).  When the illegal activity in question is "continuous and ongoing," we are less likely to foreclose probable cause on the basis

---

[13] The affidavit indicates that "Cynthia was able to identify both parties from Knox's Facebook posts that the officer provided."  This at least implies that Detective Finley met in person with Ms. McBee. (Finley Aff. ¶ 4).

[14] This should not imply that ex-girlfriends will always make particularly reliable informers.  Rather, issuing judges are responsible for making a comprehensive assessment of an informer's credibility, taking into account basis of knowledge, motivation to lie, and all other "circumstances set forth in the affidavit."  See Gates, 462 U.S. at 238.  In some cases ex-girlfriends will make particularly reliable informers given their close, personal relationship with the target of the investigation. In other situations, the particular circumstances of their present relationship may cast a shadow on the reliability of their information.  There is no per se rule for when statements from an ex-girlfriend will bear sufficient indicia of reliability and when they will not.

of otherwise dated information.  United States v. Mathis, 357 F.3d 1200, 1207 (10th Cir. 2004).

Even if the district court was correct in holding that there was insufficient evidence of timeliness in this affidavit to establish probable cause (a matter on which we do not express an opinion), that decision was not so obvious as to preclude good-faith reliance on the magistrate's decision.  Ms. McBee indicated that Knox had become violent with her "lately," establishing timeliness regarding her testimony.  (Finley Aff. ¶ 4).  She similarly indicated that Knox "always" carried a gun and—listed in the same sentence of the affidavit—"had threatened her and her neighbor in December," less than a month before she spoke with Detective Finley.  Id.  Taken together, it is a reasonable assumption that Ms. McBee had seen Knox "lately" and he had guns on his person at that time.  That the conduct described is a "continuous and ongoing" felony further militates in favor of probable cause.  See Mathis, 357 F.3d at 1207.

Armed with the testimony that Knox "always" carried a gun and owned "numerous weapons," Detective Finley also established in the affidavit that a phone tied to Knox was tracked to 431 Freeman on February 3, 2014, and then again on February 6, 2014.  (Finley Aff. ¶¶ 9,10).  That he was there twice in four days suggested that Knox was not only visiting 431 Freeman, but establishing a longer-term presence at the residence.  Given that the affidavit was sworn on February 6, and the warrant issued later the same day, this location information was timely.

### 3. Nexus

Finally, it is the conjunction of Ms. McBee's timely statement that Knox always carried a gun and the officers' timely information concerning Knox's location that provided the critical nexus between the illegal firearm sought in the search and 431 Freeman.  In order for an affidavit to establish probable cause there must be "a 'nexus between the contraband to be seized . . . and the place to be searched.'" Gonzales, 399 F.3d 1225, 1228 (10th Cir. 2005) (internal alterations omitted) (quoting United States v. Rowland, 145 F.3d 1194, 1203–04 (10th Cir. 1998)).  This nexus exists when the affidavit "describes circumstances which would warrant a person of reasonable caution in the belief that the articles sought are in a particular place."  United States v. Villanueva, 821 F.3d 1226, 1236 (10th Cir. 2016) (internal quotation marks omitted) (quoting United States v. Biglow, 562 F.3d 1272, 1279 (10th Cir. 2009)).

In this case, Ms. McBee's timely statement that Knox "always" carried a gun, combined with the evidence that Knox was located at 431 Freeman, provides facially sufficient evidence that Knox's illegally possessed firearm would be at 431 Freeman when he was there.  Furthermore, the affidavit established that as of the afternoon the affidavit was presented to the issuing magistrate, the cell phone was still "pinging" in the location of 431 Freeman, indicating that Knox likely remained inside the residence.  (Finley Aff. ¶ 11.)  In light of Ms. McBee's reliability, the timeliness of the information in the affidavit, and the nexus the affidavit created between Knox's firearms and 431 Freeman, we cannot say the affidavit was "so lacking in indicia of

24

probable cause as to render official belief in its existence entirely unreasonable."

Leon, 468 U.S. at 923.[15]

Therefore, regardless whether the district court was correct in concluding that the affidavit was insufficient to establish probable cause, the good-faith exception to the warrant requirement precludes suppression of the fruit of the subsequent search. Accordingly the district court's decision denying Knox's suppression motion is AFFIRMED.

---

[15] While we do not hold that it is such a close question so as to necessitate reliance on this fact, that Detective Finley relied on an Assistant District Attorney to draft the affidavit and warrant application, would weigh in favor of applying the good-faith exception.  Cf. Messerschmidt, 565 U.S. at 553–55 (holding in the qualified immunity context that having secured the approval of their warrant application from both a superior and a deputy district attorney was "certainly pertinent in assessing whether [the officers] could have held a reasonable belief that the warrant was supported by probable cause").